## THE STATE v. NELSON.

1. **Intoxicating Liquors:** JUROR: CHALLENGE FOR CAUSE. Where a juror, called upon the trial of an indictment for the unlawful sale of intoxicating liquors, stated that he was opposed to saloon keeping and opposed to the law regulating the sale of intoxicating liquors, but that he was not prejudiced against a man for selling wine and beer, he was a competent juror and the challenge for cause was properly overruled.

2. **Witness:** REPUTATION: EVIDENCE OF. A witness, whose reputation for general morality and truth is assailed, may sustain his character by showing that his neighbors and those having the best opportunity of knowing, have never heard anything said about his character, good or bad. This kind of negative proof is competent to show good reputation.

3. **Evidence:** EXCLUSION OF: ERROR CURED. The exclusion of testimony, if erroneous, is cured by the same testimony in substance being subsequently admitted.

4. ———: SUFFICIENT TO SUSTAIN VERDICT. Where one witness testified that he bought whisky of defendant in his saloon, and the defendant, testifying in his own behalf, merely stated that he did not remember selling whisky to the witness, the evidence is sufficient to sustain the verdict of guilty.

*Appeal from Polk District Court.*

FRIDAY, APRIL 21.

THE defendant was indicted for, tried and convicted of, the crime of nuisance, committed by using a building for the purpose of keeping and selling therein intoxicating liquors contrary to law. The defendant appeals.

*D. Donovan*, for the appellant.

*Smith McPherson, Attorney-general*, for the State.

DAY, J.—I. The jury being filled for the trial of the cause with the exception of one man, and the defendant having exhausted his peremptory challenges, H. Monroe was called by

the sheriff, and, upon examination answered as follows: "I have no opinion in the case; I would try my best to do justice to a man on trial for an offense of this kind. Almost every one knows that I am opposed to the business of saloon keeping. I am opposed to the law regulating the sale of intoxicating liquors, but as long as it stands as it now is, I am not prejudiced against a man for selling beer or wine. I am not a license man, I mean just what I say." The defendant thereupon challenged the juror for cause, because of his opposition to the law as it now exists. The challange was overruled, and the defendant excepted. It appears from the answers of the juror that his opposition to the law grows out of the fact that it does not prohibit the sale of wine and beer. Still the juror testified that as the law stands, he is not prejudiced against a man for selling beer or wine. In other words that proof of the sale of beer or wine would not have any influence upon him in considering the case. From the juror's statements it appears that his opposition to the law would not affect him in the consideration of the case, and that, notwithstanding such opposition, he could render an impartial verdict. The challenge to the juror was properly overruled.

II. The only witness introduced in chief, on the part of the State, was James Spencer. For the purpose of impeaching the witness, the defendant introduced a number of witnesses, who testified that the general moral character of James Spencer, in the neighborhood where he lives, is bad. To sustain the character of the witness the State introduced one J. C. Painter, who testified that he had known the witness about five years, and never heard anything worse of him than drinking. Upon cross-examination Painter testified that Spencer had been in his employ for two or three years, and had handled thousands of dollars for him. When called upon to name some person he had heard speak well of Spencer, the witness said: "I don't know that I ever heard any person speak good or bad of him." The court thereupon

said: "When a man has lived for five years in the neighbor-
hood of a man, and been in his employ for two or three years,
and mixed with the same people, and the witness who is on
the stand never heard that man's character or honor called
in question, that is the best kind of evidence that he is a man
of good moral character, for the reason that we have but few
trumpeters for what good we do in this world, but we have
many trumpeters for the evil we do. It is generally like
rolling snow, the farther it goes the larger it gets." The
defendant objected to this statement for the reason that the
jury are the judges of the testimony.

The State also introduced one D. B. Gottschall, who testi-
fied that he was somewhat acquainted with James Spencer,
and knew him for two years in Jasper county, but did not
know his general moral character in that county before he
came to Polk county. The court thereupon said: "You can
ask him whether, during all that time, he ever heard his char-
acter called in question. I do not decide that that is conclu-
sive proof, but it is good proof tending to show a man's good
character. If you have associated and done business with
the same people, and never heard his character called in ques-
tion, you may take it as good evidence tending to establish
his character. It is the strongest kind of evidence in that
direction." The defendant excepted to this statement of
the court. The State then asked the following question:
"You may state whether, while you knew Mr. Spencer in
Jasper county, you ever heard anything against his reputa-
tion or character." To this the witness answered: "I did
not." Respecting this evidence the court instructed the jury
as follows:

"When there has been testimony introduced for the pur-
pose of showing that a witness who has testified in a case has
a bad moral character and a bad reputation for truth, and
witnesses are introduced to rebut such testimony, and they
testify that they have lived in the same neighborhood
with the witness for four, five, or six years, and show that

they have mixed, done business and associated with the same people that the witness has lived among for five or six years, and then testify in substance that they never heard anything against the witness' moral character, and that they have never heard his reputation for truth called in question, that is among the best of evidence tending to show that the witness has a good reputation in both of said respects, and such testimony is entitled to just such weight and credit, and just such weight and credit only, as you may think it entitled to."

To this instruction the defendant excepted. The defendant assigns as error the several actions of the court above objected to. It must be competent for one, whose reputation for general morality and truth is assailed, to sustain his character by showing that those having the best opportunity of knowing his reputation have heard nothing said respecting his character. Otherwise, the person, who has so far lived a blameless life as to provoke but little discussion respecting his character, would oftentimes be utterly unable to support his character when assailed.

We are inclined to think, however, that the court was not strictly correct in characterizing this evidence as the best evidence of reputation. It cannot be fairly said that proof that one's neighbors have never heard his character canvassed, is better proof of his good reputation, than proof that his neighbors generally speak in terms of commendation of his character. All that can properly be said of the kind of negative proof under consideration is, that it is competent proof of good reputation and should be accepted and weighed by the jury. Still, taking the whole action of the court together, we are unable to see how the defendant could have been prejudiced by it. The statement during the trial that the evidence proposed was the best evidence, and the direction to the jury that it was amongst the best evidence, was the statement of a mere abstraction, having no practical bearing upon the ultimate decision, so long as the court left to the jury the

question of the weight and effect of the evidence, and directed them that it was entitled to such weight and credit, and such weight and credit only, as they might think it entitled to.

III.   The witness, James Spencer, upon cross-examination testified: "I make my headquarters on the east side at Mr.

3. EVIDENCE: exclusion of: error cured.

Stolgren's; he furnished me all the money I wanted." He was then asked the following questions: " Do you know of Stolgren and Nelson having had trouble a short time ago?" This was objected to as immaterial, and the objection was sustained. It is insisted that as Spencer made his headquarters at Stolgren's, and was furnished money by him, it is competent to show the relations existing between Stolgren and defendant as having some bearing upon the interest which the witness might feel in the prosecution. But the witness did subsequently, in the further progress of the cross-examination, state all that he knew about a difficulty between Stolgren and the defendant, and when he learned it. If, then, the ruling of the court was erroneous, which we do not determine, the error was cured by the testimony subsequently admitted.

IV.   The witness, Spencer, was asked, upon cross-examination, what was his condition as to being sober when he testified before the grand jury. The State objected to the question as not proper cross-examination, and the objection was sustained. The appellant insists that this examination was proper, because the witness admits that he had refreshed his recollection by reference to his testimony before the grand jury. Upon the contrary, the witness testified that he had not refreshed his memory by his testimony before the grand jury, and that he had not seen the minutes of that testimony since he gave it.

V.   The defendant insists that the evidence is not sufficient to support the verdict. The witness, Spencer, testified

4. ——: sufficient to sustain verdict.

that he bought whisky from the defendant in his saloon. The defendant was a witness in his

own behalf. In his testimony he does not deny that he sold whisky to Spencer, but simply states he does not remember doing so. In our opinion the evidence supports the verdict.

The instructions given properly reflect the law of the case. Those asked and refused, so far as they embody the law, were embraced in the instructions given. We discover no error in the case.

AFFIRMED.