## J. W. FRENCH v. E. P. SALE.

1. INSTRUCTION. *Disputed facts. Province of jury.*
   S. sued out an attachment against A. and levied on certain property in the possession of A., and over which A. had exercised acts of ownership. F. interposed a claim to the property, and offered evidence to show that A. was in possession of the property and had exercised acts of ownership over it simply as his agent. The court, on the trial, instructed the jury that "The jury are authorized to take into consideration the statement of F., that the property in controversy belonged to A., and the consequent assumption and exercise of acts of ownership by A. over the property, and his silence as to any claim of F. thereto when notified of the levy of the writ of attachment thereon, as evidence tending to show that the property did, in fact, belong to A." *Held*, that such instruction is erroneous, because it assumes that A. exercised acts of ownership over such property as owner, and not as agent, which is a disputed point of vital importance, and was for the jury, and not for the court, to decide.

2. SAME. *Weight of evidence. Section 1714, Code of 1880, applied.*
   The instruction above quoted is also erroneous, because after enumerating certain facts therein, it announces that such facts are to be taken into consideration by the jury "as tending to show that the property did belong to A." Such instruction, being on the weight of evidence, is forbidden by § 1714 of the Code of 1880.

3. PRACTICE. *Examination of witnesses. Putting a party under the rule.*
   A party to a suit, who is also a witness, cannot be excluded from the court-room in order to prevent his hearing the testimony of the other witnesses in his behalf, as an order to that effect would be a violation of § 30, Art. 1, of the constitution of the State. But such party may be required to testify before the other witnesses are examined, and in case he refuses to do so he may be excluded from the room while such witnesses are testifying.

4. EVIDENCE. *Of general reputation of witness. Preliminary examination.*
   H. was called as a witness to discredit the testimony of F. by impeaching his character for veracity. He was asked if he knew the general reputation of F. for truth and veracity, and answered in substance that he had no test—that he had never heard any one speak of it—but after "further questions," not set out in the record, he answered that he did know it, and would not believe F. on oath. It must be presumed that the "further questions" elicited explanations which, though not contained in the record, made the witness' answers reconcilable and rendered his evidence competent.

5. SAME. *Examination of witness as to character.*
   When a witness is produced to impeach the character of another by general reputation, he should be compelled to answer, as a preliminary matter, whether or not he knows the general reputation of the person for truth and veracity in the community or neighborhood in which he resides or has

resided. If the witness answers in the negative, his examination on that topic should close; if in the affirmative, he may be examined further. If it appears that the witness does not understand the preliminary question, he should be instructed by the court, in effect, as stated in the opinion, but after such instruction no further testimony as to character should be received from the witness, unless he first answers the preliminary question in the affirmative.

APPEAL from the Circuit Court of Monroe County.

HON. J. W. BUCHANAN, Judge.

E. P. Sale sued out a writ of attachment against A. H. French, and levied on certain property found in his possession. J. W. French, brother of A. H. French, claimed the property, and filed the necessary claimant's affidavit. Issue having been joined between the plaintiff and the claimant, a trial was had to test the right of property. The third instruction given for the plaintiff on the trial was as follows:

"Statements of a party made against his own interest are evidence against him, and the jury are authorized to take into consideration the statement of J. W. French that the property in controversy belonged to his brother, A. H. French, and the consequent assumption and exercise of acts of ownership by A. H. French over the property, and his silence as to any claim of J. W. French thereto when notified of the levy of writs of attachment thereon, as evidence tending to show that the property did in fact belong to A. H. French." It was shown in evidence that A. H. French was in possession of the property, and exercised acts of ownership over it, but he claimed to do so simply as the agent of J. W. French.

On this trial, when A. H. French was about to be examined as a witness for the claimant, the plaintiff asked the court to exclude J. W. French, the claimant, from the room while A. H. French's testimony was being given. The court ruled that if J. W. French intended to testify afterward he would be excluded, but if the claimant would testify first he would not be excluded. It seems that J. W. French did not avail of the opportunity to testify before his witness and then remain in the room, and, therefore, was excluded against the protests and objections of his counsel, who claimed that the presence of the claimant was necessary to enable them to properly examine A. H. French,

During the progress of the trial one A, R. Henwood was introduced and asked if he knew the general character of J. W. French for truth and veracity in the neighborhood in which French lived, to which he answered: "That takes in a great deal of scope. I could hardly say. I have no test. I never heard any one speak of it. Can't give name of a single person." The bill of exceptions then sets out as follows: "After further questions the witness says yes, he knows his [claimant's] character, and would not believe him on his oath in a court of justice. Claimant's counsel moved to exclude because he did not qualify as a witness in that behalf. Motion overruled and counsel excepted to the ruling of the court then and there."

The jury found a verdict for the plaintiff in attachment. E. P. Sale and J. W. French, the claimant, appealed.

*Houston & Reynolds,* for the appellant.

1. The court erred in giving the third charge asked by plaintiff in this, that said charge assumed as a fact that the *assumption and exercise* of acts of ownership by A. H. French over the property was a consequent of the statement of J. W. French, that the property in controversy belonged to A. H. French, when the court ought to have left it to the jury to determine under all the testimony before them whether the assumption and exercise of acts of ownership by A. H. French was a *consequent of J. W. French having stated that the property belonged to A. H. French,* or whether it was a *consequent* of A, H. French *having agreed* that *he would take possession and control of said property for the purpose of making sale of it for J. W. French.* There may have been testimony introduced tending to show *each* of the theories, certainly much to show the truth of the latter.

In this charge the court usurped the prerogative of the jury. It assumes that the facts *are thus,* and being thus they tend to show that the property was the property of A. H. French. In the same charge the court assumes the existence of another *controverted* fact which is "that A. H. French was *silent as to any claim of J. W. French* to the property when notified of the levy of the writ of attachment thereon; and then *gravely* states *that* that was *evidence tending to show the property did in fact belong to A. H. French,*

when he should only have gone to the extent of saying *that if A. H. French was silent when informed of the levy of the attachment,* it tended to show that the property in fact belonged to A. H. French, and it is doubtful whether *even that* would not have been going *too far,* considering the fact that the levy was made to pay the debt of A. H. French. His interest was adverse to J. W. French's pecuniarily.

2. *This case involves* more than the mere placing a witness "*under the rule.*" It was a witness who was a party to the suit. It was depriving the counsel and the party himself of the advantage which he could have been in the examination of another important witness. It is unusual for a litigant to be excluded from the court-room during the examination of the witnesses, even though he may himself intend becoming a witness in his own behalf, and, we submit, is a deprivation of a constitutional right. "No person shall be debarred from prosecuting or defending any civil cause, for or against himself or herself, before any tribunal in this State, by him or herself, or counsel, or both."—Bill of Rights, Art. 1, § 30, p. 21 ; Rev. Code of Miss. 1880.

The citizen's rights are no more sacredly protected from *criminal prosecution, without being heard by himself or counsel or both, by* § 7 *of the Bill of Rights,* than are his *civil* rights *protected* under § 30 of the Bill of Rights. Under each he has the right to defend himself or a defense by counsel or both. See authorities §§ 7 and 30 of Bill of Rights of Miss.; 49 Miss. 722; 50 Miss. 273; 51 Miss. 568 and 355; *Larue* v. *Russell,* 26 Indiana Rep. 386.

3. We submit that the way, and *only* way, a witness can know the general reputation of the person in question among his neighbors is by what they generally say of that person. And Henwood having negatived that mode he could not truthfully say that he knew it. Yet, after making that statement, says he "does not know it," and proceeds to say, further, that "he would not believe him on oath in a court of justice." Thus failing to state what was proper and necessary he should have stated, he proceeds to state what he ought not to have stated. It was not the *province* of the witness to give *his opinion,* but to give the jury the facts,

and allow them to *believe* or *disbelieve* the witness French, as their judgments might be impressed and influenced by the facts.

Witnesses' opinions are often the offspring of prejudice and malice.

Again, it *cannot be contradicted.*

Hence, the weight of authority is, that it is *improper* for an *impeaching* witness to testify as to his *belief* of another's truthfulness. See 1 Greenleaf on Ev., § 461 and note.

*Sykes & Bristow* and *J. M. Allen,* for the appellee. ·

1. The third charge merely refers to the testimony, as it appears in the bill of exceptions, as sustaining the principle as to *admissions against interest,* and merely *authorizes* the jury (of course, *if they believe* it) to take all this testimony as evidence *tending* to show that the property was A. H. French's. The same charges were practically approved by the court on the first appeal.

2. The enforcement of the rule on witnesses is a matter of discretion with the court, and we cannot think this court will hold it has been abused in this case.

Claimant has not been deprived of any constitutional right, and, if he has, it was by his own act in refusing the offer of the court made in all fairness and equity. The court offered him the right of staying and "defending both by himself and counsel," but he declined the offer unless the court would allow his alleged co-conspirator to testify first in his hearing. *Volenti non fit injuria.* See *Myrick* v. *Wells,* 52 Miss. 149.

3. The objection to Henwood's testimony as to the character of claimant for veracity is not well taken. He does *qualify himself* by saying, "Yes, he knows his character, and would not believe him on oath in a court of justice." The rest of his testimony goes simply to its *credibility,* that is as to whom he had heard speak of it, etc., etc. *No objection was made below to the other witnesses as to character.*

We respectfully ask an affirmance.

ARNOLD, J., delivered the opinion of the court.

We find nothing in the various errors assigned in this cause for which the judgment should be reversed, except the third instruction given for the plaintiff. In giving this instruction an error

was committed fatal to the judgment. The instruction declares in effect, among other things, that the assumption and exercise of acts of ownership by A. H. French over the property in question was in consequence of the property belonging to him. It is not contradicted that A. H. French had had possession of the property and exercised acts of ownership over it, but it was a disputed point of vital importance in the case, whether this was in consequence of his being the agent of his brother, J. W. French, or of his being owner of the property. This was a question of fact to be determined by the jury, and not by the court.

The instruction is erroneous in another aspect. After enumerating certain facts, it announced that they were to be taken into consideration by the jury as evidence tending to show that the property did in fact belong to A. H. French. In this respect it was an instruction on the weight of evidence, which is positively forbidden by law. Code, § 1714.

The weight, tendency, and effect of testimony after it goes to the jury is to be ascertained and settled by them. In its admission the court determines that it tends to prove the issue joined, but after it reaches the jury they may judge otherwise. Their freedom of action on the subject should not be restrained by instructions from the court. The convictions of the court as to the tendency of testimony should not be impressed upon the jury any further than is done by permitting it to go to the jury.

As to the second assignment of error, it may be said that when an order is made requiring witnesses to be examined out of the hearing of each other, a party to the suit who is also a witness, should not be included in the order, so as to prevent him from being present during the progress of the trial. He has a right to be present, and to compel him to leave the court-room unconditionally, while the cause to which he is a party is in process of judicial investigation, would be repugnant to that provision of the constitution which declares that " no person shall be debarred from prosecuting or defending any civil cause for or against him or herself before any tribunal in this State, by him or herself, or counsel or both." Constitution of Miss., Article I, § 30; 1 Greenlf. Ev., § 432, note; *Ryan* v. *Cranch*, 66 Ala. 244.

But if it is deemed essential to the discovery of truth that a party to a civil suit, who is also a witness, should be examined before he has heard the testimony of other witnesses in his own behalf, it is not error to require him to testify before such witnesses are examined, and in case he refuses to do so, as J. W. French did, to put him under the rule while such witnesses are being examined. If in this manner he is absent from the court-room during any part of the trial, it is his own fault, and he has no cause to complain of it.

It is doubtful whether the witness, Henwood, had sufficient knowledge of the general reputation of J. W. French to render him a competent witness on the subject. When asked if he knew the general reputation of French for truth and veracity, etc., he answered, that he could hardly say; that he had no test; that he had never heard any one speak of it; but after "further questions," not set out in the record, he answered, that he did know it, and would not believe him on oath. In this condition of the record, it may be, and perhaps must be, assumed that the "further questions" suggested and elicited explanations, not contained in the record, which rendered his last answer reconcilable with his first, and that his evidence, with or without explanation, and however contradictory, should have been submitted to the jury, as was done, for what it was worth.

But the testimony of this witness suggests the reflection that in the administration of justice the settled rules of evidence should be observed and enforced. These rules are established for the benefit and protection of all, and should not be disregarded even to secure the ends of justice in a particular case. The wisdom and justice of our laws are strikingly illustrated in the clearness and certainty of the evidence which they require to deprive one of his life, liberty, character, or property.

Testimony as to general reputation is usually and necessarily indefinite as to the dimensions of the neighborhood in which the person whose character is involved resides, or has resided, and as to the number of those who have been heard to speak in reference to his character, but there is no good reason why a witness as to

character should not be required to answer with certainty at the outset of his examination whether or not he knows whereof he is called to speak.

The best character, it is said, is generally that which is the least talked about, and the best evidence of good character is that the witness has been thoroughly conversant with the party for years, and never heard anything against his character. 1 Greenlf. Ev., § 55, note ; 1 Whart. Ev., § 49 ; 1 Taylor Ev., § 350.

A witness may well say that he knows the general reputation of a person, and that it is good, if he has known the person long and well and never heard his character questioned, and such testimony is admissible to prove good character ; authorities *supra ;* but it is not perceived how a witness can, according to legal rules, swear that the general reputation of a person is bad, unless he has heard it discussed by the neighbors and acquaintances of such person.

When a witness is produced to impeach the character of another by general evidence affecting the character of the latter for veracity, he should be asked and compelled to answer, as a preliminary matter, whether or not he knows the general reputation of the person for truth and veracity in the community or neighborhood in which he resides or has resided. 1 Whart. Ev., §§ 563, 565 ; 1 Greenlf. Ev., § 461 ; 2 Taylor Ev., § 1470. If he answers in the negative, his examination on that topic should close. If he answers in the affirmative, he may be examined further as to whether the general reputation of the person is good or bad, and whether from such general reputation he would believe the person under oath, and the sources and extent of the information of the witness may be tested by cross-examination.

If it appears that the witness does not understand the nature of the preliminary question, he should be instructed by the court to the effect that he is not, in response to this question, to express his own estimate or private opinion of the character of the person, or to speak of particular facts tending to show good or bad character, that it would be a gross violation of law for him to do so, but that before he says aught else, he must answer the question whether or not he knows the general reputation of the person for truth and

veracity in the community or neighborhood in which the person resides, or has resided within a period not too remote to indicate the present status of his character for truth and veracity—that general reputation means the estimate in which one is commonly held, or the character attributed to him in a general way by his neighbors where he is best known—that knowledge of what a majority, or any definite number, of a person's neighbors think or say of him is not necessary to qualify a witness to testify as to such person's general reputation, but if the witness has heard a sufficient number of them express themselves to be able to say, as a matter of conscience, that he knows the common or general opinion of the community or neighborhood on the subject, he is competent. *Pickens* v. *The State,* 61 Miss. 563 ; *Powers* v. *Presgroves,* 38 Ib. 227.

After such instruction no further testimony as to character should be received from the witness, unless he answers the preliminary question in the affirmative. For the error in the third instruction given for appellee the judgment is

*Reversed.*