## COLE *v.* STATE.

### Opinion delivered April 21, 1894.

1. *Murder*—Corpus delicti.

   A conviction of murder will be set aside if there is no evidence as to the means by which the deceased came to his death.

2. *Evidence—Proving testimony before coroner.*

   It is improper on a murder trial to permit witnesses to testify in detail, in rebuttal of defendant's testimony, as to what he testified before the coroner's jury of inquest, the coroner's written statement of his testimony being the best evidence thereof.

3. *Impeachment of witness—General reputation.*

   A witness, called to impeach another witness, may do so by testifying that he knows his general character and reputation among his neighbors for truth and morality, and from that knowledge would not believe him on oath.

4. *Impeached witness—How sustained.*

   A witness who is called to sustain another witness sought to be impeached may do so by testifying that he knows his general character and reputation among his neighbors for truth and morality, and from that knowledge would believe him on oath; or he may testify that he has been acquainted with him for such a time and under such circumstances that he would be likely to hear what was said about him, and that he has never heard any remark about his character—the fact that a person's character is not talked about at all being evidence that his character is good.

Appeal from Sevier Circuit Court.

WILL P. FEAZELL, Judge.

*J. C. Head* for appellant.

1.   There is *no evidence* to support the verdict.

2.   The evidence of Annie Logan to impeach Sam Lacy, and of Annie Logan and Ed. Moss to sustain Thomas Brimmer was not admissible.   1 Rice on Ev. p. 629, 630.   The witness must be acquainted with the general reputation of the witness among his neighbors.

1 Gr. Ev. sec. 461 and notes; 15 Ark. 651; 34 *id.* 257, 262; 51 *id.* 140; 29 *id.* 137; 16 U. S. (Lawy. ed.), p. 479 and notes; 23 How. (U. S.), 2; 4 Wend. 257; 19 *id.* 579. No evidence can be used except *general evidence.* Roscoe, Cr. Ev. p. 95, 96, top and side.

3. "A man cannot be hanged upon bare suspicion," and it cannot be said that defendant was not prejudiced by the evidence of Ed. Moss and Annie Logan. 49 Ark. 364; 34 *id.* 262.

4. The examination must be confined to the general character or reputation for truth and veracity. Whart. Cr. Law (3d ed.), p. 377–8.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. There is evidence to support the verdict.

2. The testimony of Ed. Moss was not incompetent. 16 Am. & Eng. Enc. Law, 485; 8 Am. Dec. 655; 21 *id.* 356.

BUNN, C. J. The appellant, having been indicted in the Little River circuit court for the crime of murdering one Drennan Logan, was tried, on a change of venue, in the Sevier circuit court, at its January term, 1894, and convicted of murder in the first degree, and sentence and judgment were pronounced accordingly. From the judgment the appellant appeals to this court, and asks a reversal of the same.

The appellant was the father-in-law of the deceased, and they lived near each other. There was evidence going to show the existence of animosity in the heart of appellant towards the deceased; that, about 4 p. m. on the 15th day of September, 1893, the deceased left his home to visit a neighbor by the name of Howard, his route leading by the residence of appellant; that he was seen to pass there; that, soon after, the report of a gun was heard by persons at and near appellant's residence

and other places in the neighborhood, in the direction of the locality where the body of the deceased was subsequently found; that deceased had left home riding a mule, and that the mule was discovered near the spot where the body of deceased was found. The evidence was entirely circumstantial.

The appellant is a colored man, and so was the deceased. The neighborhood was one of almost exclusively colored people, there being but about six white men within a circle of a radius of six miles. Many, and indeed nearly all, of the witnesses called to testify as to the occurrence were colored people. There were efforts *pro* and *con* at impeachment of witnesses, and the legal propositions growing out of the case mostly spring from this circumstance.

1. *Corpus delicti* must be proved in murder cases.

In the first place, we have been unable to find, anywhere, any evidence of the means by which the deceased came to his death. From the very nature of things the connection of the appellant with the killing must have been that he was the slayer by shooting the deceased with a gun, and the charge was so laid, and all the evidence was given that direction. Whether the deceased was killed by being shot, or fell from his mule, died suddenly from natural causes, or came to his death in any other manner, there is not the least intimation in the testimony, unless it be in the statement of witnesses here and there that he was "killed" on a certain day, or "when he was killed" and the like. Under the circumstances we cannot comment upon the evidence in other respects, but as to this we think the omission or defect is fatal.

2. As to proving testimony of a witness taken before the coroner.

The defendant having testified in behalf of himself, a witness testifying subsequently in rebuttal on behalf of the State was asked to detail what defendant had sworn before the coroner's jury of inquest. To this defendant objected, on the ground that the coroner's written state-

ment of the testimony was the best evidence of what the defendant had testified, and that the same should have been produced. This objection was overruled, however, and the witness proceeded to state what defendant had said, as to a particular event, when testifying before the coroner's jury. Witness's statement does not materially differ from appellant's statement on the trial, and for that reason the point seems to have been abandoned, and would not be recalled here, but for the reason that the question might arise hereafter in the case. It is proper that a witness, whose testimony is attempted to be impeached on the ground of prior contradictory statements, should be treated fairly by having his attention called to the particular time, place, circumstance and surroundings of the prior statement. So, also, when his former statement has been reduced to writing, as is required by law in cases of inquest, the better rule, if not the essential rule, is to produce the writing when it is possible to do so. Fairness, propriety and correctness all support this view.

Another question arises on the objection of the defendant to the manner in which questions are propounded to and answered by witnesses called to impeach another on the ground of bad reputation for truth and morality, and also to sustain the reputation of a witness thus sought to be impeached. The plain, simple formula in the first instance is essential. The impeaching witness should be interrogated as to his knowledge of the general character and reputation, among his neighbors, for truth and morality, of the witness sought to be impeached, and from that knowledge, if sufficient to support an opinion, whether or not he would believe the person on oath. Where a witness is introduced to sustain the character of the witness sought to be impeached, similar interrogatories should be propounded to him. Something of greater latitude, however, is allowable in

3. Mode of impeaching witness.

4. Mode of sustaining impeached witness.

the answer in this case than in the other, but it is difficult to lay down any definite rule on the subject. The following quotation from Rice on Criminal Evidence, page 610, expresses our view of the subject, to-wit: "A very sensible and commendable instance of the relaxation of the old and strict rule in the reception of negative evidence of good character—as for example, the testimony of a witness who swears that he has been acquainted with the accused (witness) for a considerable time, under such circumstances that he would be more or less likely to hear what was said about him, and he has never heard any remark about his character—the fact that a person's character is not talked about at all being, on grounds of common experience, excellent evidence that he gives no occasion for censure, or, in other words, that his character is good."

Evidence of character should be general, and therefore questions as to knowledge of character should be general, so that the answers should not consist of recitals of particular instances, or be confined to estimates of particular individuals or classes.

For the errors named, the judgment of the Sevier circuit court is reversed, and the case is remanded for further proceedings not inconsistent herewith.