MARION W. SINCLAIR *v.* STATE OF MISSISSIPPI.

[39 South. Rep., 522.]

1. HOMICIDE. *Evidence. Uncommunicated threats.*

Uncommunicated threats made by the deceased against the defend-·ant are admissible in evidence in a prosecution for homicide:

(*a*) Where there is a reasonable doubt as to who was the aggressor in the conflict; and

(*b*) Where they throw light on the significance of the acts of the deceased.

2. SAME. *Reputation. Peace or violence. Discussion of.*

The testimony of a witness to the effect that he knew the general reputation of the accused for peace, and that it was good, should not be excluded because he subsequently stated that he never heard the reputation of the accused discussed.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Sinclair, the appellant, was indicted for manslaughter, tried, convicted, and appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*J. W. Cassedy,* and *Mixon & Butler,* for appellant.

The threat made was that he (Johnson, the deceased) intended to take Sinclair's pistol away from him and beat him to death. This evidence was clearly admissible, although the threat had not been communicated to the defendant. Abbott's Trial Brief Criminal Causes, sec. 316, p. 582. Under the facts in this case it is peculiarly admissible, for the reason that the evidence for the accused shows that the deceased was evidently attempting to do the very thing which he had threatened to do.

Where the question is as to what was deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that the attitude was one hostile to the defendant, though

such threats were not communicated to the defendant; the evidence is not relevant to show *quo animo* of the defendant, but it may be relevant to show that at the time of meeting the deceased was seeking defendant's life. Wharton's Criminal Law, sec. 1027, approved in *Wiggins* v. *Utah,* 93 U. S., 465; *Johnson* v. *State,* 54 Miss., 430; *Guice* v. *State,* 60 Miss., 714; *Hawthorne* v. *State,* 61 Miss., 749; *Johnson* v. *State,* 66 Miss., 189 (s.c., 5 South. Rep., 95); *Bell* v. *State,* 66 Miss., 192 (s.c., 5 South. Rep., 389); *Harris* v. *State,* 72 Miss., 99 (s.c., 16 South. Rep., 360).

Undoubtedly the court erred in sustaining the motion to exclude the evidence of Harrell as to the character of the accused, as it is held in numerous cases: "The testimony of a witness to the good character of the accused cannot be excluded merely because his only reason for so saying is that he never heard it discussed or questioned." *State* v. *Grate,* 68 Mo., 22.

*J. N. Flowers,* assistant attorney-general; *J. J. Cassidy, J. B. Holden,* and *James H. Price,* for appellee.

The exclusion of testimony touching threats was not error. Threats are never admissible where the defense relied upon is an accident. Sinclair testified unequivocally that the shooting was an accident. Threats and overt acts, danger, real or apparent, to life or limb, on the one hand, and accidental killing of a human being, on the other, are not in the same class, not measured by the same law, not written in the same language. "Apparent danger" that justifies action in one's defense and makes threats admissible is defined by this court in *Evans* v. *State:* "When we use the term 'apparent danger,' we mean such overt, actual demonstration by conduct and acts, of a design to take life or do some great bodily injury, as would make the killing apparently necessary to self-preservation." Proofs of threats are never admissible unless there has been some overt act. *Kendrick* v. *State,* 55

Miss., 436; *Moriarity* v. *State,* 62 Miss., 654; *Lundy* v. *State,* 44 Miss., 669; *Parker* v. *State,* 55 Miss., 414; *Hinson* v. *State,* 66 Miss., 532 (s.c., 6 South. Rep., 463).

There was no error in excluding Harrell's testimony. The court could have limited the number of witnesses upon questions not controverted. 8 Am. & Eng. Ency. Law (2d ed.), 468, 469. And, besides, this testimony was cumulative.

Argued orally by *J. W. Cassedy,* and *W. B. Mixon,* for appellant, and by *J. H. Price,* for appellee.

CALHOON, J., delivered the opinion of the court.

Appellant was indicted for manslaughter and convicted. He was a peace officer of McComb City, and the homicide occurred while he was in the effort to arrest Johnson, the man killed, for a misdemeanor being committed in his presence, which arrest was, as it is said, being resisted by the deceased. The offense being committed was profane swearing in the presence of others, some of them ladies, on a public sidewalk of the city. In the effort to arrest and the resistance of it, there was, at some period of it, a grappling of the two, and at some period of the altercation each drew a pistol. As to which was the aggressor in the grappling or which first drew or began to draw his pistol the testimony conflicts. Certain it seems to be, however, that the accused "got the drop" on deceased and made him throw down his pistol, and that accused, still holding his own weapon on deceased, stooped and picked up the pistol which had been dropped and put it in his pocket. There was another grappling after this, and, according to some of the testimony for the prosecution, the fatal shot was fired after this, while the two were apart and deceased was making no hostile demonstration; but, according to evidence for the defense, the firing of the fatal shot was while they were clinched, the deceased being the aggressor. There was evidence also that this shot was fired while deceased was trying to get hold of the pistol on the person of the

accused; and the accused himself testifies that he had no design to shoot, but that his weapon fired accidentally in the tussle. This is a general view of the prominent features of the evidence in this record. From this and the details, all of which we have examined with care, it appears that appellant was entitled, if he could, in order to establish his right to an acquittal, to awaken a reasonable doubt in the minds of the jury that the killing was (1) in self-defense or (2) purely accidental in attempting arrest and without culpable negligence on his part.

In the matter of self-defense, as to the danger, real or reasonably apparent, in the light of testimony of Johnson's acts and probable purpose, the defendant had the right not only to show the bad character of Johnson for peace, which was properly allowed by the learned judge below, but also to show threats by him against defendant, which was refused. It is rare indeed, if it is ever the case, where evidence of the bad character of deceased is admissible and that of threats is not. In cases of doubt as to who was the aggressor, or to throw light on the significance of the acts of deceased and what from them would be reasonable apprehension on the part of accused, we think uncommunicated threats admissible. B. & A.'s Dig., p. 321 *et seq*, sec. 233 *et seq*. See particularly *Moriarity* v. *State*, 62 Miss., 654; *Foster* v. *State*, 70 Miss., 755 (12 South. Rep., 822); *Prine* v. *State*, 73 Miss., 838 (19 South. Rep., 711); *Holly* v. *State*, 55 Miss., 424. The threat was that he intended to take Sinclair's pistol away from him and beat him to death with it.

In the progress of the trial the accused offered the testimony to his own good character for peace of a former city marshal, of the sheriff, and of a prominent physician, and it was properly allowed. He then offered the testimony of a justice of the peace of the city where the death occurred—Mr. Harrell—who said he knew Sinclair's general reputation in that community for peace or violence, and that it was good. On cross-examination it was elicited that he had "never heard it discussed at all," and the

court thereupon, on the state's motion, excluded the testimony. This was fatal error. Good character of citizens is the essential base upon which alone can rest any solid social superstructure. Without it law is a mere empty phrase, because it cannot be put in force, in a government by the people, over a corrupt population. In criminal trials it is sometimes the only safe refuge of innocence, and often it can be established only by proof, from those who ought to know, that they had never heard it questioned or discussed. There are bishops in Mississippi eminent for erudition, wisdom, and piety. All know their general reputation for peace and quiet; all would, we suppose, so testify; and yet none could say that it had ever been discussed. The character of good men is rarely if ever discussed for peace or violence or integrity. Are they to be denied, for this reason, any resort to their reputation in the face of a criminal charge? Is a woman to be denied it in defense of her chastity? The questions expose the absurdity and injustice of such denial. When a witness says he knows the general reputation of an accused for peace or violence, it must go to the jury, weakened with them, if it may be, by cross-examination as to the basis of his knowledge. On what has been said in reference to the introduction of evidence of good character, we refer to *Hussey* v. *State* (Ala.), 6 South. Rep., 423, 424; *Coleman* v. *State,* 59 Miss., 490; *French* v. *Sale,* 63 Miss., 393; *Pickens* v. *State,* 61 Miss., 567, 568; *State* v. *Grate,* 68 Mo., 27; 1 Wigmore on Evidence, 55 *et seq.*

We purposely refrain from particularizing instructions and passing upon the propriety of giving or refusing them, since a new trial will be had, and if the facts are the same, charges will conform to the principles announced in this opinion. The accused is entitled to have the jury so instructed as to give him his rights under the law of self-defense and reasonable apprehension of great hurt from overt acts, according to what they may believe of the evidence, and also under his defense of accidental, unintentional discharge of the pistol, if he was proceeding to

make a lawful arrest in a lawful way and the discharge was accidental in a struggle in which he was not in fault.

*Reversed. and remanded.*