STATE *vs.* OLIVER STEWART, ELIJAH BREWINGTON AND JOHN BROWN.

*Criminal Law—Larceny—Evidence—General Reputation—Accomplice; Testimony of—Conviction, and Not Arrest, Affects the Credibility of a Witness.*

1.   In order to show they were engaged generally in the commission of larceny, a witness was asked by the State at the trial what he and the defendant had driven into the country for on a Saturday night following the theft; *held* not admissible.

2.   It is not the question of arrest, but of conviction which is admissible to affect the credibility of a witness.

3.   How general reputation may be proved.   The testimony of a witness will be stricken out if it appear upon cross examination that he was not qualified to speak.

4.   Counsel in calling a witness to prove reputation takes the risk of his being qualified to testify, and each one he calls counts as one of the six he is entitled to call.

5.   The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. Great caution in weighing such testimony is dictated by prudence and good reason.   A jury may convict upon the uncorroborated testimony of an accomplice, yet the better rule is that a conviction should not be had unless such testimony is corroborated either by direct or circumstantial evidence A jury may convict upon the testimony of an accomplice if they are satisfied from all the facts and circumstances of the case, beyond a reasonable doubt, that it is true, without any confirmation of such testimony.   And in such a case, it would be their duty to do so.

*(September* 19, 1907.)

LORE, C. J., and BOYCE, J., sitting

*Daniel O. Hastings,* Deputy Attorney-General, for the State

*J. Frank Ball* and *James Saulsbury* for the defendant Brewington.

Court of General Sessions, New Castle County, September Term, 1907.

INDIDTMENT FOR LARCENY.

At the trial the State offered proof, chiefly of an accomplice, one Oliver Stewart, connecting the defendant with the larceny of about 160 bushels of wheat from the farm of Charles Megginson of New Castle Hundred, on August 10th, 1907.

The witness Stewart was asked by the Deputy Attorney-General— after the former had testified that he and Brewington, the defendant, had driven into the country on the Saturday night following the theft for from three to four hours in order to see what they could find—what he meant by that.

Objected to by counsel for defendant as irrelevant, being too remote from the time of the larceny, which was the night before.

*Deputy Attorney-General Hastings:*—This is to show that they were engaged generally in larceny together.

Boyce, J.:—We think that is going too far. You may show that they were out together and that they returned together, but what was in this witness' mind or knowledge as to their purpose in being together, we think that is too remote. We sustain the objection.

Q. What did you and Brewington do out in the country that night?

(Objected to by counsel for defendant on the same ground as before stated.)

Boyce, J.:—As the Court is now advised we think the question is inadmissible.

(On cross examination, the witness was asked by Mr. Ball, of counsel for defendant, whether he was arrested once for stealing some money from a preacher.)

(Objected to by the Deputy Attorney-General as immaterial.)

Boyce, J.:—This question may have been admitted sometime without objection. It is not the question of arrest, but of conviction which is admissible to affect the credibility of the witness. We sustain the objection.

*Michael Connell*, being sworn as a witness on behalf of the defendant, testified as follows:

*By Mr. Saulsbury:*

Q.  Where do you reside?  A.  At the northwest corner of Fifth and Spruce.

Q.  What is your business?  A.  Grocery business.

Q.  Were you ever clerk of the market in this City?  A. Yes sir; for about three years.

Q.  Did you know Elijah Brewington, the defendant?  A. Yes sir.

Q.  How long have you known him?  A.  About ten years.

Q.  Do you know his general reputation for honesty and fair dealing in the community in which he lives.  A.  I always had that opinion of him.

Q.  Do you know it?  A. ". No, sir; I don't know it.  That is really my opinion of the man.  I don't know it.

Q.  Do you know his general reputation, what the people generally say about it?

(Form of question objected to by the Deputy-Attorney General.)

BOYCE, J.:—Put the question again in the usual form.

Q.  Do you know his general reputation in the community in which he lives for honesty and fair dealing.  A.  Yes sir; so far as I know.

Q.  Is it good or bad?  A.  It is good.

### CROSS EXAMINATION.

*By Mr. Hastings:*

X.  On what do you base your answer that he has a good reputation?  A.  Well, I base it in this way; that I have dealings with a great many people in that neighborhood, and I judge by their dealings and their ways of dealing.

X.  Have you ever heard anybody say anything about this man one way or the other?  A.  Never.

*Deputy Attorney-General Hastings:*—I ask that the testimony of this witness be stricken out, as he has thoroughly disqualified himself to speak of the reputation of this defendant.

EVIDENCE—PRACTICE.

*Mr. Ball:*—Your Honors have held that that is a matter for comment to the jury and that the testimony goes to the jury for what it is worth. If your Honors feel inclined to strike it out I have other witnesses that I can call in place of this witness, if I am allowed to do so.

BOYCE, J.:—The practice has been that counsel in calling a witness to prove reputation takes the risk, and each one he calls counts as one of the six. Character evidence must be based upon the general reputation of the party in whose favor it is offered in the community in which he lives We shall have to grant this application and order the testimony to be stricken from the record.

*Charles Moxley*, being sworn as a witness on behalf of the defendant, testified as follows.

*By Mr. Ball:*

Q. Where do you live? A. No. 2 Coleman street.

Q. In this City? A. Yes, sir.

Q. Do you know Oliver Stewart, the man sitting in the dock? A. Yes, sir.

Q. How long have you known him? A. About three years.

Q. Do you know his general reputation in the community in which he lives for truth and veracity? A. No good, sir.

Q. Answer the question, yes or no? A. I know his reputation; yes, sir.

Q. Is it good or bad? A. No good.

Q. Knowing what you do of his reputation for truth and veracity, would you believe him on his oath? A. No, sir.

CROSS EXAMINATION.

*By Mr. Hastings:*

X. Where do you live? A. No 2 Coleman street.

X. How long have you lived at No. 2 Coleman street? A. For four years.

X. How long have you known this man Stewart? A. Three years.

X. And you say his general reputation is bad for telling the truth? A. Yes, sir.

X.   Whom did you ever hear say that?   A.   I know it my self because I had dealings with him.

X.   Is it on that that you base your answer?   A.   Yes sir.

*Deputy Attorney-General Hastings:*—I ask that the whole of this witness' testimony be stricken out.

*Mr. Ball:*—I would like to ask the witness a few questions before the Court act on that motion.

BOYCE, J.:—In the matter of introducing character evidence there is a well established rule, and the examination of this witness has been conducted in conformity with that rule. It appears from the cross examination of the witness that he based the whole of his testimony in his direct examination upon his personal relations and private dealings with the man about whom he is testifying. This is contrary to the rule—Such evidence is based upon general reputation. We think that you may not come in after the examination in chief and cross examination of the witness, and after application has been made to strike out the evidence, and amplify the testimony given in direct examination.

The motion to strike out the testimony is granted.

(Among the prayers offered on behalf of defendant, was the following):

"*Third.*   The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury.   It has sometimes been said that they ought not to believe him unless his testimony is corroborated by other evidence; and without doubt, great caution in weighing such testimony is dictated by prudence and good reason.   But there is no such rule of law; it being expressly conceded that the jury may, if they please, act upon the evidence of the accomplice without any confirmation of his statement.   But on the other hand, judges in their discretion will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration, and it is now so generally the practice to give such advice, that its omission would be regarded as an omission of

duty on the part of the Judge. It may be now regarded as the settled course of practice not to convict a prisoner in any case of felony upon the sole and uncorroborated testimony of an accomplice."

State vs. *Fahey*, 3 *Pennewill* 594.

BOYCE, J., charging the jury:

Gentlemen of the jury:—Oliver Stewart, Elijah Brewington and John Brown, the latter not having been apphrended, were jointly indicted at the present term of this Court. The indictment charges that they did on the tenth day of August last in New Castle Hundred this county feloniously steal, take and carry away 160 bushels of wheat of the goods and chattels of Charles Megginson. Upon his arraignment Stewart pleaded guilty, but Brewington pleaded not guilty of the offense charged. And you have been empanelled to try Brewington alone.

Theft or larceny is the felonious taking and carrying away of the personal property of another with intent to convert it to the use of the taker without the consent of the owner.

Every person charged with the commission of a crime is presumed in law to be innocent until the contrary is shown to the satisfaction of the jury beyond a reasonable doubt.

The burden of the proof of every material element necessary to constitute the offense of larceny rests upon the State.

Stewart has admitted his guilt but the State contends that Brewington and another participated in the theft of the wheat. Brewington denies that he had any part in the theft. And it is for you to say whether under all the evidence Brewington is or is not guilty.

You are the sole judges of the credibility of the witnesses and of the weight and value of their testimony.

The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. Great caution in weighing such testimony is dictated by prudence and good reason. A jury may convict upon the uncorroborated testimony of an accomplice, yet the better rule is that a conviction should not be had unless such testimony

is corroborated either by direct or circumstantial evidence. A jury may convict upon the testimony of an accomplice if they are satisfied from all the facts and circumstances of the case, beyond a reasonable doubt, that it is true, without any confirmation of such testimony. And in such a case, it would be their duty to do so.

1 *Greenleaf on Ev.,Sec.*380; *State vs.Freedman,*3 *Pennewill* 403.

Where there is conflict of testimony, as in this case, you should endeavor to reconcile it if you can. If you cannot you must determine whose testimony you deem most entitled to credit and belief, taking into consideration all the facts and circumstances testified to by the several witnesses, their means of information and opportunity of knowing the facts of which they testified, and the manner in which they gave their testimony.

If after a careful and conscientious consideration of all the evidence in this case, you should entertain a reasonable doubt as to the guilt of the accused, such a doubt inures to his benefit.

By a reasonable doubt is not meant a mere fanciful, vague or speculative doubt, but a reasonable, substantial doubt growing out of the evidence, remaining in your minds after a careful and conscientious consideration of all the evidence—such a doubt as reasonable, fair-minded, conscientious men would entertain under all the facts and circumstances of the case.

As to the proof of good character we say to you that it is to be considered by the jury as any other evidence whenever satisfactorily shown, tending to prove the innocence of the accused, and it is to be given just such weight as, under the circumstances of the case, it is entitled to, considered in connection with all the other evidence in the case.

If you are satisfied from the evidence in this case, beyond a reasonable doubt, that Brewington committed the offense charged against him, or if you find that he was present on the night the wheat was stolen, aiding, procuring, abetting or counselling Stewart in the theft, your verdict should be guilty; otherwise your verdict should be not guilty.

Verdict, not guilty.