MICHAEL VALENT and BRUNO DOMINELLO, Defendants Below, Plaintiffs in Error, *vs.* THE STATE OF DELAWARE, Plaintiff Below, Defendant in Error.

*(February* 28, 1927.)

WOLCOTT, Chancellor, PENNEWILL, C. J., RICE, HARRINGTON and RICHARDS, J. J., sitting.

*John W. Huxley, Jr.,* for Plaintiffs in Error.

*Clarence A. Southerland,* Attorney-General, and *James R. Morford,* Deputy Attorney-General, for Defendant in Error.

Supreme Court, June Term, 1926.

(No. 5, June Term, 1926)

RICHARDS, J., delivering the opinion of the Court:

The defendants, Valent and Dominello, were indicted by the Grand Jury of New Castle County, at the September Term of the Court of General Sessions, 1925, for highway robbery; said offense being the culmination of an assault upon one William Eberle, on the 15th day of July, 1925. The indictment consists of two counts, each charging the defendants with making a felonious assault upon the said Eberle, in Wilmington Hundred, on or near the highway leading from the state road near Farnhurst to the New Castle Turnpike, known as Stoeckle's Lane, and feloniously taking and carrying away certain paper money of the value of $70. The de-

fendants were convicted, and a motion for a new trial being made on their behalf, the same was denied by the Court. Subsequent to the argument on defendants' motion for a new trial, but before its determination, the Attorney General filed a written motion of *nolle prosequi* as to those portions of the indictment which referred to a highway in New Castle County "on or near" which the offense was alleged to have been committed. Fourteen assignments of error were filed on behalf of the defendants, the first, second and eighth of which are apparently abandoned, since they were not mentioned in the brief or in the argument of counsel.

For reasons which will subsequently appear, the ninth, tenth, eleventh, twelfth and thirteenth assignments of error will be considered first. These assignments of error are based upon the ruling of the trial Court in striking out the evidence introduced by the defendants to prove good character, because the cross-examination of the witnesses disclosed that they had never heard the reputation of the defendants discussed in any way. All of the witnesses produced for this purpose lived in Wilmington, where the defendants also lived, some had lived near them, and most of them had known said defendants for a number of years.

While this question has never been passed upon by this Court, yet there is no doubt that it has been raised many times in the trial Courts of this State, and that those Courts have consistently adopted the rule that character evidence is based upon general reputation which can only be shown by proof of what is generally said about the accused in the community in which he lives. The leading cases in which the question has been considered and determined are *State v. Conlan*, 3 *Penn.*218, 50 *A*. 95; *State v. Jones*, 4 *Penn.* 109, 53 *A*. 858, and *State v. Stewart*, 6 *Penn.* 435, 67 *A*. 786. The position taken by the Courts is very clearly expressed by the following language which was used in the case of *State v. Conlan*, above cited:

"General good character for honesty and fair dealing is proved by evidence of general reputation in that respect; that is, by proof of what the people in the neighborhood in which the accused dwells generally say of his conduct or character in regard to honesty and fair dealing."

In the case of *State v. Stewart,* above cited, the witness testified on direct examination:

"Q. Do you know his general reputation in the community in which he lives for honesty and fair dealing? A. Yes, sir; so far as I know.
"Q. Is it good or bad? A. It is good."

Then, upon cross-examination:

"Q. Have you ever heard anybody say anything about this man one way or the other? A. Never."

Upon motion to strike out the testimony the Court said:

"Character evidence must be based upon the general reputation of the party in whose favor it is offered in the community in which he lives. We shall have to grant this application and order the testimony to be stricken from the record."

The case of *Daniels v. State,* 2 *Penn.* 586, 48 *A.* 196, 54 *L. R. A.* 286, which was brought to this Court on a writ of error, to the Court of General Sessions, involved the admission of character evidence, but the phase of the question there presented was entirely different from the one now under consideration. In that case, the trial Court instructed the jury that when the evidence was doubtful, good reputation, when proved, should inure to the acquittal of the defendant, but when it is positive and distinct and the offense is clearly and satisfactorily proved, good reputation is of little value. This court reversed the ruling of the trial Court and held that character testimony was, "at least, a circumstance in every case, when proved, to be weighed and estimated by the jury according to the weight of the testimony by which it is supported in connection with that to which it is opposed."

In view of the former rulings of the trial Courts of this State with respect to the admission of character evidence, the position taken by the trial Court in the case now before us was the only consistent position that it could have taken. In fact, any other ruling would have been contrary to all former rulings of our trial Courts, and without authority in this State upon which to base it. If the rulings of our trial Courts upon this question are wrong, it is proper that exception should be taken thereto and the point in controversy brought to this Court on a writ of error as was done in this case.

■ We are now squarely confronted with the question of whether we shall follow the strict ruling with respect to the admissibility of character testimony which has been adhered to so long in this State, or, whether we shall adopt the more liberal course that has already been recognized in many jurisdictions. An examination of the authorities discloses that in many of the States of this country, the Courts have taken the view that one who is well acquainted with an accused person and has been in close touch with him may testify as to his reputation, even though he has never heard it discussed; on the ground that the fact that one's character and reputation is not discussed is excellent evidence that they are good. *People v. Van Gaasbeck*, 189 *N. Y.* 408, 82 *N. E.* 718, 22 *L. R. A.* (*N. S.*) 650; *Day v. Ross*, 154 *Mass.* 13, 27 *N. E.* 676; *Holmes v. State*, 88 *Ala.* 26, 7 *So.* 193, 16 *Am. St. Rep.* 17; *Gifford v. People*, 148 *Ill.* 173, 35 *N. E.* 754; *Millikin v. Long*, 188 *Pa.* 411, 41 *A.* 540; *State v. Nelson*, 58 *Iowa* 208, 12 *N. W.* 253; *State v. Lee*, 22 *Minn.* 407, 21 *Am. Rep.* 769; *Cole, v. State*, 59 *Ark.* 50, 26 *S. W.* 377; *Reid v. State* (*Tex. Cr. App.*), 57 *S. W.* 662; *Sinclair v. State*, 87 *Miss.* 330, 39 *So.* 522, 2 *L. R. A.* (*N. S.*) 553, 112 *Am. St. Rep.* 446; *Lemmons v. State*, 4 *W. Va.* 755, 6 *Am. Rep.* 293.

This rule is recognized by the leading textwriters on evidence, including Prof. Wigmore, who in *volume* 3 of his work, at *Section* 1614, treats it in this language:

"Upon the same principle, the absence of utterances unfavorable to a person is a sufficient basis for predicting that the general opinion of him is favorable. A witness to good reputation may therefore testify by saying that he has never heard anything said against the person."

The testimony of witnesses who say that they have never heard anything said against the character of an accused is referred to by the Courts as negative testimony, and the trend of modern authority is in support of it.

This rule seems to the Court to be founded on sound judgment, and it is unable to find sufficient reason why it should not be applied to the case now before it. If we continue to adhere to the doctrine that only those witnesses who have heard an accused

person's reputation discussed can testify thereto, then persons of the highest honor and integrity would find it difficult, if not impossible, to prove their good reputation in their community. The very fact that they have lived model lives and that their standing in their community is so high that no one questions it, would prove to be a detriment rather than as asset. Every city, town or locality has its citizens whose standing is beyond reproach to such an extent that no one ever mentions it, yet he would be deprived of the benefit of that standing if his reputation were attacked. It seems to us that a person who can prove, by those in his community by whom he is well known, that his character has never been questioned or talked about, has established a good reputation.

We are, therefore, of the opinion that the court committed an error in rejecting the testimony offered to prove the good reputation of the defendants.

The rulings of the trial court on the questions raised by the ninth, tenth, eleventh, twelfth and thirteenth assignments of error are, consequently, hereby reversed and a new trial granted.

Having arrived at this decision, it is unnecessary for us to consider the third, fourth, fifth, sixth, seventh and fourteenth assignments of error.

Note.—The fifth, sixth, and seventh assignments of error raised the question as to whether the State had a right, after verdict, to enter a *nolle prosequi*, as to a portion of the indictment and also whether there was a variance between the allegation in the indictment that the offense was committed "on or near Stoeckle's Lane" and the proof at the trial that it was committed about two city blocks from Stoeckle's Lane.