### KOCH *v.* PRODUCTION STEEL COMPANY.

1. NEGLIGENCE — CRANE OPERATOR — BANDAGED HAND — PROXIMATE CAUSE—EVIDENCE.

    Claim of negligence on part of defendant steel company and its crane operator, based on fact that latter was operating crane with an injured and partially-bandaged hand when crane inflicted fatal injuries on plaintiff's decedent, an electrician's helper employed by electrical company doing installation work in a construction job at the plant, was not substantiated, where there is no showing that the bandaged hand interfered in any way with his operating ability or that it had a causal connection with the accident.

2. EVIDENCE—HEARSAY—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

    Testimony of defendant crane operator as to agreement between representatives of defendant steel company, including its crane operator, and superintendent of electrical company doing installation work at the plant, as to control of power for cranes that had been lodged in superintendent for deceased's employer, which testimony was not objected to as equally with- ·

REFERENCES FOR POINTS IN HEADNOTES

[1] See, generally, 38 Am Jur, Negligence § 334.
[2] 20 Am Jur, Evidence §§ 451–453, 608 *et seq.*
[3] 20 Am Jur, Evidence §§ 451, 452.
[4] 20 Am Jur, Evidence § 453.
[5] 38 Am Jur, Negligence §§ 12, 13, 92–94, 332.
[6] 38 Am Jur, Negligence §§ 47, 334, 347.
[7] 3 Am Jur, Appeal and Error §§ 823, 824.

in knowledge of such superintendent, now deceased, was not objectionable as hearsay, as the arrangement was an essential and relevant element in the case (CL 1948, § 617.65).

3. SAME—THEORY OF HEARSAY RULE.

The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination.

4. SAME—HEARSAY.

The hearsay rule does not apply to an extrajudicial utterance that is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted.

5. NEGLIGENCE — EVIDENCE — STEEL COMPANY — CRANE OPERATOR — ELECTRICIAN'S HELPER—CONTROL OF ELECTRIC POWER.

The duty of defendant steel company and its crane operator to use care with respect to plaintiff's decedent, an electrician's helper, was fulfilled, where electric power for use of crane which fatally injured decedent, had been turned on at the direction of superintendent of decedent's employer which had contracted to do electrical installation work at construction job and which superintendent, by previous agreement, had sole charge of determining when electric power could be used in various areas of the building.

6. SAME—GROSS OR SUBSEQUENT NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE.

Motions of defendant steel company and its crane operator for judgment *non obstante veredicto* were properly granted in action against them by administrator of the estate of deceased electrician's helper who was fatally injured in craneway at plant wherein decedent's employer was engaged in electrical installation, where there is an absence of proof that defendants were guilty of any breach of duty or negligence proximately causing decedent's injury or that defendants were guilty of gross or subsequent negligence.

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

Claim of defendants that plaintiff's decedent was guilty of contributory negligence is not discussed, where it is found that defendants were not guilty of negligence proximately causing fatal injuries to decedent.

Appeal from Wayne; Toms (Robert M.), J.   Submitted June 16, 1955.   (Docket No. 74, Calendar No. 45,810.)   Decided December 1, 1955.

Case by Frank Koch, administrator of the estate of John A. Koch, deceased, against Production Steel Company, a Michigan corporation, and Lesley Le-Roy Touchstone for damages resulting from death occurring while engaged in construction work when struck by crane in steel plant.   Judgment for defendants notwithstanding verdict.   Plaintiff appeals. Affirmed.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Robert E. Fox,* of counsel), for plaintiff.

*Crawford, Sweeny, Dodd & Kerr,* for defendant Production Steel Company.

*Shapero & Shapero,* for defendant Touchstone.

BOYLES, J.   John A. Koch, an electrical worker, sustained fatal injuries while working on a construction job at the plant of the defendant Production Steel Company in Wayne county.   Koch was an employee of the Jack Frost Electric Company, the contractor doing the electrical work on the construction job.   The administrator of his estate brought the instant suit against the Production Steel Company and one of its employees, Lesley LeRoy Touchstone, alleging that the death of the decedent was caused by the negligence of the defendant company and its said employee.   At the close of the proofs on jury trial both defendants moved for a directed verdict of no cause for action on the ground that the plaintiff had failed to establish any actionable negligence on the part of either of them which was a proximate cause of the decedent's fatal injuries, and

the court reserved decision on the motions. The jury returned a verdict of $15,728 for the plaintiff. After the jury's verdict the plaintiff moved for entry of judgment on the verdict, and the defendants moved for entry of judgment of no cause for action. The trial court granted the defendants' motions and entered a judgment for both defendants, *non obstante veredicto,* from which the plaintiff appeals.

Defendant Production Steel Company operated a steel plant in Wayne county and had under construction a new plant which was rectangular in shape, over 500 feet long. The Jack Frost Electric Company was the contractor doing the electrical work for the new plant. Plaintiff's decedent, John A. Koch, was employed by the electric company. The plant under construction had in it 3 craneways, each of which ran the full length of the building in an east and west direction. There was a north, a center, and a south craneway, in each of which was installed 2 cranes so that the bridge of each crane could travel in an east or west direction. The bridge of each crane carried a "trolley" which could move either in a north or south direction and on each trolley was a cable with hook attached to pick up material, which could be vertically raised or lowered. The bridge of each crane was approximately 30 feet above the floor of the building, with a cab underneath in which the operator of the crane was installed.

We are here concerned only with the south craneway, which will be referred to as craneway A, and the center one which will be referred to as craneway B. The west crane in craneway A will be referred to as #1, the west crane in craneway B as #2, and the east crane in craneway B as #3. At the north end of crane #1 and suspended below the crane was the small cab in which were installed the control mechanisms. Defendant Touchstone, the operator of the crane, was stationed in this cab.

On the day of the injury (April 4, 1949), defendant Touchstone arrived at his place of employment about 7:30 a. m. The crew he worked with was there, the usual starting time being 7 a. m. On this particular day they could not start until 8 a. m. because there was no power to the crane. Touchstone testified that in order to have the electricity turned on he had to go to Mr. Alexander (since deceased), the superintendent for Jack Frost Electric Company, who had sole control over the power to operate the cranes, and request that power be turned on; and that Alexander would then do so if he thought it proper. This arrangement had been made at a conference a week or two prior to the accident and was considered necessary because the electricians were still working part of the time in and around craneway A, as well as in other parts of the building. The persons present at said conference, in addition to Alexander, were the president of Production Steel, the acting superintendent, the maintenance foreman for Production Steel, the defendant Touchstone, and Daniel Lamet who was in charge of construction. Touchstone further testified that whenever he commenced work with the crane he gave a blast of about 30 seconds' duration on the warning horn or signal device of the crane; that he did not later sound the warning again. Touchstone and other employees testified that it was not the practice in that plant to sound the warning signal with every movement of the crane. The reason given was that such practice would result in it being sounded so often that everyone would ignore it.

The accident happened at approximately 9 a. m. The crane involved here had then been in continuous operation and many movements had been made back and forth. The "trolley" and the "hook" were also in continuous operation. One truck, which was at the far west end of the building, had been loaded

with coils of steel, and a second was in the process of being loaded. At the time when plaintiff's decedent was injured the crane had been operating continuously for about an hour. The decedent was back of the crane, above and behind the cab of Touchstone, the crane operator, and out of his sight, when he started the movement of the crane which caused the accident. The crane had moved only about 4 feet after being started by Touchstone when it apparently contacted plaintiff's decedent, who was apparently behind the crane, above and behind the cab in which Touchstone was starting the crane, and not within the sight of Touchstone who was on a lower level.

Suspended from the crane were the cables and the hook which from time to time had a very heavy load attached. Moving this hook and its bundles of steel endangered the workmen on the plant floor, and this required the operator to give it almost undivided attention. It was left to Jack Frost Electric Company, or its superintendent in charge of power, to give notice to the defendants of the intention of an electrical construction worker to enter the area where the power was on and the crane was in operation.

A witness for the plaintiff testified that he was employed as a journeyman electrician and that he was installing night lighting at the time; that the decedent was his helper or apprentice. Some wire had been left on crane #2 and was needed to continue the work. He sent decedent, who was a crane operator, for the wire, instructing him to go to crane #3 via a ladder in craneway B and operate that crane over to #2, get the wire, return to crane #3, and otherwise return the way he had gone. He was instructed to proceed in this manner because a crane was then operating in craneway A. Decedent was last seen ascending the ladder. At each crane,

running parallel with the craneways, was a rail affixed to the upper surface of an H-beam. The various cranes moved east and west on these rails. No one actually saw the accident occur. It appears that the decedent moved #3 crane over to #2, left the cab of that crane via a ladder from the cab to the top of the crane, from there he apparently walked on or between the H-beams supporting the south rail of #2 and #3 crane and the north rail of crane #1 until he came to a vertical column, that he passed this vertical column on the south side apparently because crane #2 was stopped so that its southernmost structural members were adjacent to the vertical column which he had to pass and which extended over its rail for the width of the end of the crane. Apparently decedent intended to go to the far west side of crane #2 and then climb upon it. While Touchstone was returning to the east with crane #1 he heard decedent scream, applied his brakes, reversed his crane and moved to the west a short distance. Decedent was found between the H-beams which supported the rails, facing west, after the accident, and died several hours later.

Defendant Touchstone testified that while he was operating the crane he kept his eyes upon the hook or the load attached thereto, except to glance quickly in the direction of movement to see if the way was clear, because there were men on the floor of the plant who might otherwise be struck, and there were bundles and coils of steel which might accidentally be hooked or knocked over so as to endanger other persons.

Plaintiff asserts negligence because defendant Touchstone had an injured and partially-bandaged hand at the time, and because there was testimony that both hands were required to properly operate the crane. However, there was no showing that the bandaged hand interfered in any way with his oper-

ating ability, or that it had a causal connection with the accident.

Plaintiff also contends that it was error for the trial court to admit Touchstone's testimony of the agreement between Alexander, the superintendent for decedent's employer, and Production Steel as to the manner and conditions under which power might be turned on and the cranes operated, claiming that this is hearsay, relying on *City of Grand Rapids* v. *Coit,* 149 Mich 668; and *Colgrove* v. *Goodyear,* 325 Mich 127 (10 ALR2d 1029). However, it was not objected to on the ground that it was equally within the knowledge of the deceased.*

The testimony of the arrangement made with Alexander was not hearsay. The arrangement was an essential and relevant element in the case. The testimony was admissible.

"The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the hearsay rule." 6 Wigmore on Evidence (3d ed), pp 177, 178.

Inasmuch as the defendant Production Steel Company was required to have the power to the crane turned on only by the supervisor of Jack Frost Electric Company, the decedent's employer, and because this arrangement was made with their employer for

---

* See CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

the protection of the electricians then working in the building, the duty that the defendants owed to the electricians employed by Jack Frost Electric Company had thus been fulfilled.

We conclude that granting the motions of the defendants for judgment *non obstante veredicto* was proper under the circumstances of the case. Viewing the testimony in the light most favorable to the plaintiff, there was an absence of proof that the defendants were guilty of any breach of duty or negligence which was a proximate cause of decedent's injury. Consequently, it is not necessary to discuss the additional ground on which the defendants deny liability, namely, that plaintiff's decedent was guilty of contributory negligence. Nor do we find any proof to justify plaintiff's claim of gross or subsequent negligence.

Affirmed.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.