PEOPLE v STEWART

Docket No. 55230. Argued December 10, 1974 (Calendar No. 5).—
Decided June 4, 1976. Rehearing granted and case resubmitted
398 Mich 951.

Howard Stewart was convicted in Recorder's Court of Detroit,
Henry Heading, J., of sale and possession of heroin. Testimony
at trial showed that the heroin was delivered to a police agent
by a codefendant of Stewart; the codefendant, known as Junior,
was not apprehended. The Court of Appeals, J. H. Gillis, P. J.,
and Bashara and O'Hara, JJ., affirmed with sentence modified
(Docket No. 12243). Defendant appeals. *Held:*

1. Concert of action can be established by circumstantial
evidence. Conversations between the defendant and the police
agent and the movements of defendant and the absent co-
defendant Junior, and especially the fact the police agent did
not tell the codefendant the price she had agreed on with the
defendant, yet the codefendant returned from speaking with
the defendant and delivered heroin for the agreed price, were
sufficient to establish a prima facie case of concert of action
without any of Junior's declarations.

2. Once a prima facie case of concert of action was made by
the prosecutor, testimony as to what the codefendant Junior
said outside of the defendant's presence came within a well-
established exception to the hearsay rule and was admissible.

3. Even without the hearsay, adequate facts to go to the jury
were in evidence. In view of the circumstances absent Junior's
statement, and their safe bounds of relevancy and "indicia of

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 4, 10.
[2, 5, 6, 8, 9] 29 Am Jur 2d, Evidence §§ 496, 497.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.
[4, 6] 29 Am Jur 2d, Evidence § 658.
   30 Am Jur 2d, Evidence §§ 1151, 1152, 1157.
[6, 8, 9] 16 Am Jur 2d, Conspiracy §§ 38, 40, 41, 61.
   Admissibility as against coconspirator of extrajudicial declarations
      of coconspirator—Supreme Court cases. 1 L Ed 2d 1780.
[7] 29 Am Jur 2, Evidence § 497.
[10] 21 Am Jur 2d, Criminal Law § 333 *et seq.*

reliability", the trial judge did not err in allowing the testimony about the absent codefendant.

Conviction affirmed.

Justice Levin, with Chief Justice Kavanagh concurring, dissented: The statements allegedly made by the absent codefendant are not admissible without evidence aliunde of the commission of the crime, and such evidence cannot consist of hearsay statements or be established by testimony of the sole prosecution witness who would also report the statements allegedly made by the defendant's partner in crime. Since extrajudicial statements of a codefendant are regarded as having such infirmity that they are not admissible without independent proof of the corpus delicti, such proof may not consist of evidence having the same infirmity. The confrontation clause requires at a minimum that the people establish that there is a person described by the prosecution witness as the absent codefendant and that they made a good faith effort to produce him at trial.

46 Mich App 282; 207 NW2d 907 (1973) affirmed.

### OPINION OF THE COURT

1. WORDS AND PHRASES—PRIMA FACIE CASE—EVIDENCE.

A "prima facie" case means evidence sufficient to justify, but not compel, an inference of liability, if the jury so finds.

2. CRIMINAL LAW—EVIDENCE—HEARSAY—ADMISSIBILITY—CODEFENDANT'S STATEMENTS—CONCERT OF ACTION.

Testimony as to what a codefendant said outside of the defendant's presence comes within a well-established exception to the hearsay rule and is admissible where a prima facie case of concert of action is made by the prosecutor.

3. DRUGS AND NARCOTICS—HEROIN—EVIDENCE.

Adequate facts to establish a prima facie case of defendant's participation in a sale of heroin were in evidence where there was testimony in a trial for sale and possession of heroin that: (1) a police informant went to defendant's restaurant, and arranged a sale of some pure heroin, (2) defendant asked the informant how much money she had and responded that $20 would be fine, (3) defendant told the informant he could get the heroin for her, (4) defendant left the restaurant and walked across the street to an apartment building, (5) a codefendant joined the informant while she was waiting in the restaurant,

(6) defendant returned to the restaurant and walked directly to the kitchen in back of the restaurant, (7) defendant called the codefendant back to the kitchen and they engaged in conversation, (8) the codefendant returned, the informant gave him $20, and he passed a packet of heroin to her under the table, and (9) defendant emerged asking the informant if she would have herself together by 3 o'clock.

4. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—ACTS OF CODEFENDANT
    —CONCERT OF ACTION.

Whatever is said or done during the prosecution of a common unlawful enterprise by any one of several persons engaged in the enterprise is evidence against all the parties to the enterprise; acts and declarations of a codefendant in delivering heroin to a police informer were admissible against a defendant charged with sale and possession of heroin where a prima facie case of concert of action was established without the codefendant's declarations.

5. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—ACTS OF CODEFENDANT
    —HEARSAY.

The act of a codefendant in delivering heroin to a police informer outside of the presence of a defendant charged with sale and possession of the heroin was not an "assertive" act sometimes excluded as hearsay when done outside the defendant's presence, nor was it remote or irrelevant to the prosecution.

6. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—CONCERT OF ACTION—
    HEARSAY—CONSPIRACY— AGENCY.

Statements declared by a co-conspirator or one engaged in a concert of action are hearsay if used against another member of the conspiracy, but a widely recognized exception to the hearsay rule allows the use of those statements if the conspiracy is properly proven by evidence independent of the hearsay, under the rationale that the agency relation charges each conspirator with declarations and admissions of other conspirators.

7. EVIDENCE—NONASSERTIVE ACTS—NONASSERTIVE CONDUCT—HEAR-
    SAY.

Nonassertive acts or conduct, *i.e.,* acts or conduct which are not intended to be a means of expression, are not admitted as an exception to the hearsay rule—rather, they are not hearsay in the first place.

DISSENTING OPINION

T. G. KAVANAGH, C. J., AND LEVIN, J.

8. CRIMINAL LAW—EVIDENCE—HEARSAY—STATEMENTS BY CODEFEND-
ANT—FOUNDATION.

*Statements of a co-conspirator or coparticipant in the commission
of a completed offense are not admissible unless there is inde-
pendent evidence of the corpus delicti and of a concert of action
between the declarant and the defendant.*

9. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—STATEMENTS BY ACCOM-
PLICE—FOUNDATION.

*Evidence aliunde of the commission of a crime and the connec-
tion of a defendant to the crime cannot consist of hearsay
statements nor can it be established by testimony of the sole
prosecution witness who would also report the statements
allegedly made by a defendant's partner in the crime; it must
be adduced from another source, from outside.*

10. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFRONTATION CLAUSE.

*The Confrontation Clause requires at a minimum that the people
establish the existence of an alleged accomplice of a defendant
and that they made a good faith effort to produce him at trial
before use of his hearsay statements may be made.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training & Appeals, and *Rob-
ert A. Reuther,* Assistant Prosecuting Attorney,
for the people.

*State Appellate Defender Office* (by *Norris J.
Thomas, Jr.),* for defendant on appeal.

COLEMAN, J. Howard Stewart was convicted in
Recorder's Court of selling and possessing heroin.
The Court of Appeals affirmed. Defendant claims
the conviction should be reversed because the trial
court did not reject certain testimony as hearsay.
To the contrary, we find the testimony was prop-
erly admitted. The conviction is affirmed.

LaTonia Boldin was working as an agent for the Detroit police when defendant was arrested. The controversy concerns her appearance as a witness.

In chronological order, the testimony in question was:

(1) Mrs. Boldin went to defendant's restaurant, telling defendant she wanted a job to support her habit.

(2) When defendant asked when she could start work, Mrs. Boldin answered she could start as soon as she got her head together (*i.e.,* got a fix).

(3) Defendant *asked her* what she "was on".

(4) Defendant suggested some "P" (pure heroin):

"*A. (Mrs. Boldin):* * * * He says, 'Well, how about marijuana? I said, 'No.' I said, 'Because that's too mild.' * * *

"He says, 'well, how about some P's?'"

(5) Defendant asked Mrs. Boldin how much money she had, responding that the 20 dollars would be fine.

(6) Defendant told Mrs. Boldin he could get the "P" for her.

"*A. (Mrs. Boldin):* * * * and I asked him, I says, 'Well, could you get it for me?' * * * And he said yes."

(7) Defendant then left the restaurant, walking across the street to an apartment building.

(8) Junior joined Mrs. Boldin while she was waiting in the restaurant.

(9) Defendant returned to the restaurant, walking directly to the kitchen in back of the restaurant.

(10) Defendant called Junior back to the kitchen and they engaged in conversation.

(11) Junior returned and Mrs. Boldin gave him

20 dollars. Junior passed a packet of heroin to her under the table.

(12) Defendant emerged, asking Mrs. Boldin, "Do you think you'll have yourself together around 3 o'clock?"

In the kitchen, Junior was positioned so that Mrs. Boldin could not see what, if anything, passed to him from defendant, but concert of action can be established by circumstantial evidence. The conversations between defendant and Mrs. Boldin and defendant's and Junior's movements comprise sufficient circumstantial evidence, independent of Junior's conversation, to establish a prima facie[1] case of concert of action.[2]

Of notable impact is the fact that Mrs. Boldin did not tell Junior of the agreed purchase or price of the heroin, yet after Junior's return from speaking with defendant, he exchanged the packet of heroin for 20 dollars. Testimony concerning his conversation was not crucial to jury deliberation, although it did add flesh to the bare bones of the transaction.

---

[1] " 'A "prima facie" case means, and means no more than, evidence sufficient to justify, but not to compel, an inference of liability, if the jury so find.' " *Stewart v Rudner,* 349 Mich 459, 474; 84 NW2d 816, 826 (1957).

"PRIMA FACIE CASE. Such as will suffice until contradicted and overcome by other evidence. *Pacific Telephone & Telegraph Co v Wallace,* 158 Or 210; 75 P2d 942, 947 [1938]. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded. *In re Hoagland's Estate,* 126 Neb 377; 253 NW 416 [1934]." *Black's Law Dictionary,* 1353 (rev 4th ed 1968).

[2] For a somewhat similar case, *see Sendejas v United States,* 428 F2d 1040 (CA 9, 1970), *cert denied,* 400 US 879; 91 S Ct 127; 27 L Ed 2d 116 (1970) (hearsay declared to witness properly admitted to prove existence of conspiracy where evidence of how defendants reacted after being contacted by the witness reasonably established a prima facie case of conspiracy without considering any of the hearsay testimony). *See also, United States v Bey,* 437 F2d 188 (CA 3, 1971) (defendant's departure, declarant's arrival one-half hour later, and dialogue on price suggested union).

In defendant's absence Junior introduced himself to Mrs. Boldin and asked whether she would be working at the restaurant and if defendant had gone. He asked her if she got high, to which she replied affirmatively. Junior then asked, "did Stewart go over to the apartment building to get some?"

After defendant returned to the restaurant and had spoken with Junior in the kitchen, Junior sat next to Mrs. Boldin at the counter and allegedly asked,

"*Q.* Do you have any money for me?
"*A.* What?
"*Q.* Do you have any money for me? Twenty dollars?
"*A.* Yeah."

Junior then told her to slip it up under the counter so no one would see her. She handed him the 20 dollars and he handed her a small tinfoil packet. She asked if that was all she was going to get and Junior replied, "Yeah, because Howard sells them real mellow P".

It was then that defendant came out and asked if she would have herself together by 3:00.

In our opinion, a prima facie case of concert of action was made by the prosecutor, so the conversation with Junior (an unnamed codefendant) comes within a well-established exception to the hearsay rule.[3] Even without the hearsay, adequate facts to go to the jury were in evidence.

In 1867 Justice CHRISTIANCY stated:

---

[3] *People v Heidt,* 312 Mich 629; 20 NW2d 751 (1945); *People v Roxborough,* 307 Mich 575; 12 NW2d 466 (1943); *People v Robinson,* 306 Mich 167; 10 NW2d 817 (1943); *People v Knoll,* 258 Mich 89; 242 NW 222 (1932); *People v Nankervis,* 330 Mich 17; 46 NW2d 592 (1951); *People v Chambers,* 279 Mich 73; 271 NW 556 (1937); *People v Woods,* 206 Mich 11; 172 NW 384 (1919); *People v Parker,* 67 Mich 222; 34 NW 720 (1887).

"The general rule is well settled that, where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common enterprise, or while it is still in progress, is evidence against all the parties to it." *People v Pitcher,* 15 Mich 397, 403–404 (1867).

The challenged acts and declarations in this case were during the alleged concerted action, not before or after. A prima facie case of concert of action was established without any of Junior's declarations. The acts of Junior are not those "assertive" acts sometimes excluded *(e.g.,* pointing, sign language) nor remote or irrelevant *(e.g.,* collection of insurance as proof of death at sea). To the contrary, Junior's acts were relevant, immediate and constituted part of the transaction. His only crucial act outside of defendant's presence was passing the heroin to the witness who had been searched before entering the restaurant and who had the heroin when she emerged. We find no case in which a similar act was excluded.

The United States Supreme Court has recognized a valid distinction between acts and declarations of co-conspirators. In *Lutwak v United States,* 344 US 604; 73 S Ct 481; 97 L Ed 593 (1953), *reh den* 345 US 919; 73 S Ct 726; 97 L Ed 1352 (1953), the Court approved the use of a co-conspirator's acts against other members of the conspiracy although the conspiracy had ended. At the same time use of declarations was not allowed. The Court characterized the problem of declarations as one of hearsay:

"Therefore, the declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended. That is the teaching of *Krulewitch v United States* [336 US 440; 69 S Ct 716; 93 L Ed 790], and

*Fiswick v United States* [329 US 211; 67 S Ct 224; 91 L
Ed 196 (1946)]. Those cases dealt only with declarations
of one conspirator after the conspiracy had ended. They
had no application to *acts* of a conspirator or others
which were relevant to prove the conspiracy. True,
there is dictum in *Logan v United States* [144 US 263,
309; 12 S Ct 617; 36 L Ed 429 (1892)], frequently
repeated, which would limit the admissibility of both
acts and declarations to the person performing them.
This statement of the rule overlooks the fact that the
objection to the declarations is that they are hearsay.
This reason is not applicable to acts which are not
intended to be a means of expression. The *acts,* being
relevant to prove the conspiracy, were admissible, even
though they might have occurred after the conspiracy
ended. *United States v Rubenstein* 151 F2d 915, 917,
918 [CA 2, 1945]; see *Fitzpatrick v United States,* 178
US 304, 312, 313 [20 S Ct 944; 44 L Ed 1078, 1081, 1082
(1900)]; *Ferris v United States* 40 F2d 837, 839 [CA 9,
1930]."

Similarly, the necessity of proving a prima facie
case of conspiracy is a problem arising out of the
use of hearsay.

Statements declared by a co-conspirator (or one
engaged in a concert of action) are hearsay if used
against another member of the conspiracy. But, a
widely recognized exception to the hearsay rule
allows such use if the conspiracy is properly
proven (prima facie) by evidence independent of
the hearsay. *People v Chambers,* 279 Mich 73; 271
NW 556 (1937); *People v Lewis,* 264 Mich 83; 249
NW 451 (1933). The rationale is that the agency
relation charges each conspirator with declara-
tions and admissions of other co-conspirators. *Lut-
wak v United States, supra.* The same follows for
certain acts of a co-conspirator. Acts or conduct
not intended as assertive are not hearsay and,
therefore, they are admissible. It should be noted
that nonassertive acts or conduct are not an excep-

tion to the hearsay rule—rather, they are not hearsay in the first place.[4]

In view of the circumstances absent Junior's statement, their safe bounds of relevancy and "indicia of reliability",[5] the trial judge did not err in allowing the testimony about the absent co-defendant.

In addition, the nonassertive acts of the parties did not constitute hearsay and no error was committed in allowing a description to go to the jury.

We follow long recognized and necessary theories of criminal law as to this set of facts.

We affirm the conviction.

WILLIAMS and FITZGERALD, JJ., concurred with COLEMAN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

LEVIN, J. *(dissenting)*. Howard Stewart was convicted of sale[1] and possession[2] of heroin.

At trial, a witness testified that she purchased heroin from a man known as "Junior". The witness was permitted over objection to report certain statements she said were made by "Junior" which inculpated Stewart. "Junior" has not been identified. His asserted existence has not been independently verified. If he exists he was not appre-

---

[4] Just as nonassertive conduct is not hearsay, neither are assertive declarations not offered to prove what is asserted. *See Belvidere Land Co v Owen Park Plaza, Inc,* 362 Mich 107; 106 NW2d 380 (1960); *Koch v Production Steel Co,* 344 Mich 161; 73 NW2d 323 (1955); McCormick's Handbook on the Law of Evidence, (E. Cleary ed 1972), pp 596–600. *See also,* Fed R Ev 801(a), 801(d)(2)(E) (to take effect July 1, 1975).

[5] *See Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970).

[1] MCLA 335.152; MSA 18.1122.

[2] MCLA 335.153; MSA 18.1123.

hended. It does not appear that the people made any effort to produce him at the trial.

The Court of Appeals, finding "evidence, aliunde, of a conspiracy [between Stewart and "Junior"] to sell heroin", held that "Junior"'s statements were admissible under the co-conspirators exception to the hearsay rule and affirmed the convictions.[3]

We would reverse. The statements allegedly made by "Junior" are not admissible. Evidence aliunde of the commission of a crime and the connection of defendant to the crime cannot consist of hearsay statements or be established by testimony of the sole prosecution witness who would also report the statements allegedly made by defendant's partner in crime. Additionally, the Confrontation Clause requires at a minimum that the people establish that there is a person known as "Junior" and that they made a good faith effort to produce him at the trial.

I

The people made their case entirely from the testimony of LaTonia Boldin, an unpaid civilian undercover narcotics agent working for the Detroit Police Department.[4] She testified that she went to Stewart's restaurant, introduced herself as "Candy", and told him she needed a job to support her "habit". Stewart asked her when she could begin work, and she said as soon as she got a "fix". Stewart first offered her marijuana, which she rejected because it was "too mild", and then agreed to sell her "some P's" [heroin][5] for $20.

---

[3] *People v Stewart,* 46 Mich App 282, 285; 207 NW2d 907 (1973).

[4] Boldin testified that the police called her in and asked for her help. She said she "hates pushers".

[5] "P" appears from the record to be a street term for pure heroin.

Boldin testified: " * * * He says, 'Well, how about some P's?' * * * Well, I told him that would be fine. So he asked me, he says, 'Well, how much money do you have?' I said, 'I have $20.' And he says—he

Boldin testified that Stewart left the restaurant and entered an apartment building across the street. While he was gone, Boldin talked "for 10 or 15 minutes" with a man who introduced himself as "Junior". During the conversation they discussed narcotics.[6]

Boldin testified that when Stewart returned to the restaurant he went directly to the kitchen and called "Junior". She said that she did not see Stewart carrying anything or give anything to "Junior".[7] She could see that Stewart and "Junior" were talking, but could not hear what they said.

Stewart remained in the kitchen. "Junior" rejoined Boldin and sold her heroin[8] for $20.

Over objection, Boldin related statements of "Junior":

"He came and he sat next to me at the counter, and he says, 'Do you have any money for me?' and I said

said—he told me that would be fine. And I asked him, I says, 'Well, could you get it for me?' And he told me yes he could. And then I asked him would he. And he said yes."

[6] In closing argument the prosecutor told the jury that Boldin did not tell "Junior" that she had $20 and wanted some heroin. My colleague similarly states: "Of notable impact is the fact that Mrs. Boldin did not tell Junior of the agreed purchase or price of the heroin * * * ." The implicit suggestion is that "Junior" must have obtained that information from Stewart and must, accordingly, have been Stewart's agent or partner in the sale.

Boldin did not say that she did not tell "Junior" she had $20 and wanted some heroin. She said rather that they discussed narcotics and that she told him she got high. She said their conversation lasted 10 or 15 minutes. The record does not disclose what else they discussed, but neither does it affirmatively show that Boldin did not mention $20 or heroin.

[7] Cf. United States v Pecoraro, 115 F2d 245, 246 (CA 2, 1940). The Court ruled that the statement of a co-conspirator that he was working "in the interest" of defendant was admissible where the co-conspirator and the defendant were seen together taking alcohol from the distiller: "While Franzone's declaration, taken by itself, was not competent, his help to Pecoraro made it competent by showing their concert of action."

See, also, United States v Dichiarinte, 385 F2d 333 (CA 7, 1967).

[8] The parties have stipulated that what Boldin gave to the police when she left the restaurant was heroin.

'What?' He said, 'Do you have any money for me?' And he said, 'Twenty Dollars.' And I said, 'Yeah.' * * * And he says, 'Well, don't put it on top of the counter, slip it up under the counter so no one will see you.' When I handed him the twenty dollars he handed me a small tinfoil packet about the size of a stamp, and I looked at it, and I says, 'Was this all I'm going to get for twenty dollars?' And he says, 'Yeah, because Howard sells them real mellow P. * * * And that will give you a real boost high because Howard sells some bad stuff.' "

Stewart contends that "Junior"'s statements, which all agree are hearsay, should not have been admitted into evidence.

Hearsay statements are generally inadmissible. An exception is recognized, however, for declarations[9] of a co-conspirator made in furtherance of and during the pendency of the conspiracy. Such declarations are admissible against the defendant if the existence of the conspiracy and the connection of the defendant to it are established by independent evidence.[10]

---

[9] All agree that Boldin's account of "Junior"'s actions was admissible without proof aliunde.

"As a general rule of evidence the principal limitation on the admission of acts as evidence is that of relevancy. Since the general hearsay rule excludes only declarations and not acts as evidence, the usual statement of the coconspirator rule as applying to acts as well as to the declarations of a coconspirator is both misleading and incorrect. Because of it, courts have unnecessarily had to 'extend' the coconspirator rule, either to admit acts offered to establish facts ordinarily difficult to prove, such as intent or motive, or to admit all acts. These problems seem to stem from a failure to separate the question of whether a conspirator is substantively liable for the acts, both verbal and nonverbal, of a coconspirator, from the question of what statements of a coconspirator should be admitted as evidence against the defendant. In the recent case of *Lutwak v United States* [344 US 604; 73 S Ct 481; 97 L Ed 593 (1953)], the Supreme Court recognized this distinction and held that acts do not fall under the coconspirator rule." Developments in the Law, *Criminal Conspiracy*, 72 Harv L Rev 920, 988 (1959).

[10] *Logan v United States,* 144 US 263, 309; 12 S Ct 617; 36 L Ed 429 (1892); *Glasser v United States,* 315 US 60; 62 S Ct 457; 86 L Ed 680 (1942); 4 Wigmore, Evidence (3d ed), § 1079; Levie, *Hearsay and Conspiracy,* 52 Mich L Rev 1159 (1954).

The co-conspirators exception has been extended[11] and applied to statements of a co-participant where the charge is commission of the completed offense. Such statements are admissible where there is independent evidence of a concert of action between the declarant and the defendant.[12]

The Court of Appeals concluded that a concert of action between Stewart and "Junior" was established by evidence that " 'Junior' knew the selling price. He knew who the supposed purchaser was and what she wanted to buy. Since the agent had given only defendant [Stewart] that information, it is reasonable to conclude defendant and 'Junior' combined to make the illicit sale."[13] This rationale misconceives the nature of the precondition to admissibility; other hearsay statements of the declarant, "Junior", are not independent evidence.

This Court takes another tack. Boldin repeated hearsay statements made by Stewart as well as "Junior". This Court concludes that a prima facie case of concert of action is established by evidence

---

[11] Commentators state that co-conspirators' declarations are admitted out of necessity and not because such evidence is trustworthy or because conspirators are co-agents who are liable for each other's statements.

"The practical considerations which justify forcing a principal to adopt, for business and evidence purposes, the statements of his authorized agent are not present with a conspiracy, because its members often lack the power to control or authorize other members' actions." Regarding the trustworthiness rationale, this commentator states that, "[t]he conspiracy situation may provide strong motivation to fabricate with regard to the involvement of innocent parties if the claim of their participation would further the group's ends". Jennings, *Preserving the Right to Confrontation,* 113 U Pa L Rev 741, 755, 756 (1965).

Similarly, *see* Levie, *Hearsay and Conspiracy, supra,* p 1166; Developments in the Law, *Criminal Conspiracy, supra,* p 989.

[12] *See People v Chambers,* 279 Mich 73, 78; 271 NW 556 (1937); *Fuentes v United States,* 283 F2d 537, 539 (CA 9, 1960).

[13] *People v Stewart, supra,* p 285. *See* fn 6.

of "[t]he conversations between defendant [Stewart] and Mrs. Boldin and defendant's and 'Junior' 's movements".

## II

Stewart's statements were admitted in evidence. The admissibility of those statements is not in issue.

"Junior" 's statements were admitted over objection. The issue on appeal is the admissibility of "Junior" 's statements.

Neither Stewart's nor "Junior" 's statements are admissible without evidence aliunde. The confessions or admissions[14] of an accused are not admissible unless the corpus delicti—the fact that the charged offense was committed by someone—is established by evidence aliunde.[15] The statements of a co-conspirator or accomplice are not admissible unless both the corpus delicti and defendant's connection to the conspiracy or participation in the concert of action are established by evidence

[14] *People v Barron,* 381 Mich 421, 424; 163 NW2d 219 (1968); *People v Eding,* 292 Mich 46; 289 NW 324 (1939).

"The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession. Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here payment of money, necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated. *See Wilson v United States,* 162 US 613, 621 [16 S Ct 895; 40 L Ed 1090 (1896)]." *Opper v United States,* 348 US 84, 91; 75 S Ct 158; 99 L Ed 101 (1954).

[15] Statements which are admissions and which also fall within another exception to the hearsay rule have been admitted under certain circumstances to prove the corpus delicti. Additionally, there is authority that admissions made before the crime was committed may be used to establish the corpus delicti. *See Warszower v United States,* 312 US 342; 61 S Ct 603; 85 L Ed 876 (1941); *People v Randall,* 42 Mich App 187, 190–191; 201 NW2d 292 (1972); *People v McKinney,* 65 Mich App 131; 237 NW2d 215 (1975).

aliunde. *Glasser v United States,* 315 US 60, 74; 62 S Ct 457; 86 L Ed 680 (1942).[16]

The people presented only one witness, LaTonia Boldin, in their case in chief. The people sought to satisfy the evidence aliunde requirement entirely through her testimony. Her transaction with "Junior" would be the corpus delicti, the foundation for admitting Stewart's statements. Her conversation with Stewart and her testimony regarding the movements of "Junior" and Stewart would be the basis for admitting "Junior" 's statements. Apart from Boldin's testimony, there is no evidence that a crime was committed by anyone or that there was a person known as "Junior" in Stewart's restaurant.

Aliunde means "[f]rom another source; from elsewhere; from outside".[17]

Proof aliunde of the commission of a crime and the connection of the defendant to the crime cannot, consistent with the purpose of the rules requiring independent evidence, be established by the witness who also reports the hearsay statements; it must be adduced "from another source, from outside".

Here there is no evidence, apart from the testimony of Boldin, that a crime was committed by anyone. Similarly, all evidence of a concert of action to commit the crime was proffered by Bol-

---

[16] " * * * before the declarations of one conspirator are admissible against a coconspirator the existence of the conspiracy and the connection of the coconspirator therewith must be established." Underhill, Criminal Evidence (5th ed), § 861, p 1930.

*See, also, Minner v United States,* 57 F2d 506 (CA 10, 1932); *Thomas v United States,* 57 F2d 1039 (CA 10, 1932); *Nibbelink v United States,* 66 F2d 178 (CA 6, 1933); *Kuhn v United States,* 26 F2d 463 (CA 9, 1928); *Mayola v United States,* 71 F2d 65 (CA 9, 1934); *Montford v United States,* 200 F2d 759 (CA 5, 1952).

[17] Black's Law Dictionary (4th ed), p 97. "From another place or source; independent of." Ballantine's Law Dictionary (3d ed), p 60.

din. She testified to the extrajudicial statements of both the accused and of his alleged confederate. It stands on end the aliunde requirement to permit such cross-ruffing of the preconditions to admissibility: Stewart's extrajudicial statements are admitted on the strength of Boldin's assertion that they were made and the "independent" evidence of her testimony that she purchased narcotics from "Junior"; "Junior" 's extrajudicial statements are admitted on the strength of Boldin's assertion that they were made and the "independent" evidence of her testimony regarding Stewart's statements and the actions of Stewart and "Junior".

If the requirement of proof aliunde is to have meaning the people are obliged to prove the fact that someone committed a crime and that defendant participated in a concert of action to commit it through testimony of a witness other than the witness who testifies to the extrajudicial statements.[18]

The concern about admitting hearsay evidence relates not only to the credibility of declarants but also the accuracy of the reports of hearsay witnesses. The predicate of admissibility—proof aliunde of a concert of action—must be established by another source.

Because the only evidence that "Junior" sold heroin to Boldin and that Stewart participated in a concert of action to effect the sale is testimony of the witness who also testified to the challenged hearsay statements, the statements attributed to "Junior" were inadmissible.

## III

We would also hold "Junior" 's statement inad-

---

[18] See United States v Boswell, 372 F2d 781, 783, fn 1 (CA 4, 1967).

missible because proof aliunde of Stewart's connection to the commission of the crime may not consist of hearsay statements.[19] "Otherwise hearsay would lift itself by its own bootstraps to the level of competent evidence."[20]

To find the predicate to admissibility of "Junior" 's statements—Stewart's participation in the commission of the crime—on the strength of other hearsay would "render the innocent the helpless victims of villianous [sic] schemes, supported and proved by the prearranged and manufactured evidence of the promoters thereof".[21]

Accepting the admissibility of Stewart's statement—"yes"—, it is still hearsay. Since extrajudicial statements of a co-conspirator are regarded as having such infirmity that they are not admissible without independent proof, such proof may not consist of evidence having the same infirmity.

In *People v Barron,* 381 Mich 421; 163 NW2d 219 (1968), this Court held that proof of the corpus delicti could not consist of hearsay. Similarly here, the hearsay statement attributed to Stewart, that he said "yes" when asked by Boldin whether he would be willing to sell her some "P's," cannot be considered in deciding whether there was independent evidence of Stewart's connection to the sale effected by "Junior" to allow admission of

---

[19] *United States v Cirillo,* 499 F2d 872 (CA 2, 1974).

Declarations admissible for other purposes as exceptions to the hearsay rule cannot be used as evidence aliunde for purposes of the co-conspirators exception. Such a declaration "nonetheless *remains hearsay;* the exception does not alter its hearsay character. The statement * * * does not, by definition, constitute *nonhearsay* evidence that might be sufficient to allow the introduction of hearsay under the co-conspirator exception." (Emphasis in original.) *The Second Circuit Review, 1973–4 Term,* 41 Brooklyn L Rev 1183, 1206 (1975).

*See also* Jennings, *Right to Confrontation, supra,* p 755.

[20] *Glasser v United States, supra,* p 75.

[21] *People v Irwin,* 77 Cal 494, 503; 20 P 56, 58 (1888).

"Junior" 's statements that Stewart sells "them real mellow P" and "some bad stuff".

Although Stewart's statements are admissible for certain purposes, they are still hearsay, suffer from the same infirmity as "Junior" 's statements, and cannot provide the predicate for admissibility of "Junior" 's statements.[22]

Even if we were to accept that hearsay statements otherwise admissible can be used to satisfy the independent evidence requirement[23] under the theory that once admitted into evidence for any purpose hearsay has the same quality and force for all purposes as other evidence, we would conclude that Stewart's hearsay statement cannot be so used.

The corpus delicti—which must be established before Stewart's hearsay statements are admissible —consists of "Junior" 's actions in selling narcotics to Boldin. Since the issue here is whether "Junior" 's statements are admissible, the nature of the foundation for the admission of Stewart's statements—the actions of the declarant himself, "Junior"—disqualifies Stewart's statements from consideration in deciding whether "Junior" 's

---

[22] In a number of jurisdictions a defendant cannot be convicted on accomplice testimony unless corroborated by other evidence tending to connect defendant with the offense. It is generally held that the testimony of another accomplice is not sufficient to satisfy the corroboration requirement. *See Spears v State,* 89 Okla Crim 321; 207 P2d 363, 365 (1949); *Commonwealth v Jones,* 213 Pa Super 504; 247 A2d 624 (1968); *State v Stecker,* 79 SD 79; 108 NW2d 47 (1961); *Arnold v United States,* 94 F2d 499, 507 (CA 10, 1938).

The reason for such holdings is apparent. If accomplice testimony is regarded as so unreliable that it must be corroborated by independent evidence, it would undermine the policy requiring corroboration to allow that precondition to admissibility to be satisfied by evidence having the same infirmity.

The analogy to the rules making inadmissible extrajudicial statements of the defendant and of a co-participant unless corroborated by independent proof is apparent.

[23] *See State v Price,* 361 Mo 1034; 238 SW2d 397 (1951); *People v Pierce,* 387 Ill 608; 57 NE2d 345 (1944).

statements are admissible. To conclude otherwise
would in effect allow admission of "Junior" 's
statements based solely on "Junior" 's actions
which all would agree violates the predicate of
admissibility under the co-conspirators exception.[24]

## IV

Stewart contends that the introduction into evi-
dence of "Junior" 's hearsay statements was a
denial of his constitutional right of confrontation.[25]

It is not necessary to disposition to determine
whether the admission under the co-conspirators
exception of hearsay statements may deny the
right to confront one's accusers. The relationship
between the hearsay rule and the Confrontation
Clause is developing and at this stage "uncer-
tain";[26] the United States Supreme Court has
adopted a case-by-case approach which provides
few guidelines.[27]

We agree, however, with the United States

[24] Excluding the hearsay statements of Stewart and "Junior", the
evidence shows only that between the time Boldin sought to purchase
heroin from Stewart and her purchase of heroin from "Junior",
Stewart had a conversation with "Junior". That act, uncharacterized
by the hearsay statements, does not show participation by Stewart in
a concert of action with "Junior" to sell heroin. Also, for reasons
stated in part II, that act cannot be considered because the only
evidence of it is the testimony of Boldin, the witness who would
report the hearsay statements.

[25] US Const, Am VI; Const 1963, art 1, § 20.

[26] *See* Ashley, *The Uncertain Relationship Between the Hearsay
Rule and the Confrontation Clause,* 52 Tex L Rev 1167 (1974).

[27] *See Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923
(1965); *Douglas v Alabama,* 380 US 415; 85 S Ct 1074; 13 L Ed 2d 934
(1965); *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255
(1968); *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d
476 (1968); *California v Green,* 399 US 149; 90 S Ct 1930; 26 L Ed 2d
489 (1970); *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213
(1970); *Nelson v O'Neil,* 402 US 622; 91 S Ct 1723; 29 L Ed 2d 222
(1971).

Court of Appeals for the Sixth Circuit that "the Constitution imposes on the prosecution the burden of showing the unavailability of a witness before it may seek to introduce less reliable accounts of his statements in a criminal trial".[28] Judge McCree, writing for the Court, declared that the people are obliged to show that they made a "good faith effort" to obtain the presence of the declarant at trial before use of hearsay statements may be made.[29]

There is no showing on this record that "Junior" could not have been produced at trial through the exercise of reasonable diligence. Indeed, it has not been shown except by the representations of Boldin that a person called "Junior" even exists.[30]

The people are required by the Confrontation Clause to show that they made a good faith effort

---

[28] *Stewart v Cowan,* 528 F2d 79, 84 (CA 6, 1976).

[29] *Stewart v Cowan, supra,* referring to *Barber v Page, supra,* p 725.

[30] One witness, a waitress who was working at Stewart's restaurant when Boldin came in seeking a job, testified that she did not know any person who called himself "Junior"; the only other persons present in the restaurant when Boldin was there were Stewart, Ora Mae Graham (the cook) and some customers who purchased food and left; Boldin spoke only with Stewart, not with any of the customers; there were no black male customers around 19 years of age (as Boldin had described "Junior") in the restaurant at that time.

Another witness, the cook, testified that when Boldin entered the restaurant, there were no black male customers around 19 years of age. She further testified that after discussing possible employment with Stewart, Boldin left the restaurant and an hour later returned with a young man "around maybe 18 or 19"; when Boldin returned, the waitress who testified had left work; after Boldin arrived the second time Stewart returned to the restaurant and went to the kitchen, but did not call anyone to join him; Stewart did not talk to anyone named "Junior" and did not talk with the young man who was with Boldin; the young man and Boldin were "laughing and talking and playing records".

The information named Stewart and "John Doe alias 'Junior' (whose real name is unknown but whose person is well known)". Two and one-half years after Stewart was convicted, the information was dismissed as to "Junior" on the prosecutor's motion representing: "Unable to locate this subject." The record does not show what efforts if any were exerted by the prosecutor to identify and locate "Junior".

to identify[31] and locate "Junior" and produce him at the trial.

The convictions should be reversed.

KAVANAGH, C. J., concurred with LEVIN, J.

---

[31] "So I lived my life alone, without anyone that I could really talk to, until I had an accident with my plane in the Desert of Sahara, six years ago. * * *

"The first night, then, I went to sleep on the sand, a thousand miles from any human habitation. I was more isolated than a shipwrecked sailor on a raft in the middle of the ocean. Thus you can imagine my amazement, at sunrise, when I was awakened by an odd little voice. It said:

" 'If you please—draw me a sheep!' * * *

"And that is how I made the acquaintance of the little prince."

Saint-Exupéry, *The Little Prince* (Harcourt, Brace & World, Inc., 1943), pp 9, 13.