*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

GLENNA MARY DURAM,

　　　　　Defendant-Appellant.

UNPUBLISHED
April 30, 2019

No. 340486
Newaygo Circuit Court
LC No. 16-011473-FC

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant, Glenna Mary Duram, appeals by right her jury-trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant's convictions arise from the shooting death of her husband, Martin Duram. We affirm.

## I. BASIC FACTS

As defendant's neighbor and close friend was heading to work at 7:30 a.m. on May 12, 2015, she heard two shots fired. She was not alarmed, however, because she knew Martin hunted in the area. Later that day she received a call from her husband, who reported that Martin, with whom he regularly communicated, was not responding to his texts. After work, the neighbor went over to defendant's house. She knocked on the outer doors and windows. All of the doors were locked. No one appeared to be home except for the dog, which she could hear barking in the master bedroom when she called its name. Later that evening, the neighbor sent defendant a text asking if she and Martin were home. She received no response.

The next morning, the neighbor went back over to defendant's house. The home was still quiet except for the dog barking, and there was no sign of defendant or Martin. At around 3:30 p.m., the neighbor decided to check again to see if defendant was home. This time, defendant's front door was unlocked. The neighbor entered the house and saw that the living room was in disarray. She walked into the master bedroom, observed and stepped over some blankets on the floor, and found Martin lying on the floor in a pool of blood. She realized that defendant was lying underneath the blankets. Defendant's face was pale, and her hair was matted in blood.

-1-

Believing both Martin and defendant to be dead, the neighbor ran to a nearby house to summon help.

The neighbor returned with three firemen who had been responding to an unrelated incident nearby. As she walked back into defendant's bedroom, the neighbor thought defendant's head was now in a slightly different position than it was before, but she said nothing, thinking it was simply her imagination. When police arrived, the neighbor undertook to assist them by tending to the dog, which had curled up next to Martin and was growling at the strangers. When the neighbor heard an officer speak to defendant, she turned in that direction and saw defendant sit upright. The police officer testified that when he arrived at the scene, defendant did not appear to be dead. As he felt for her pulse, she suddenly opened her eyes, sat upright, and became combative. She was subdued and transported by ambulance to the hospital. Defendant's neurosurgeon testified regarding two bullet wounds on the right side of defendant's skull, near her ear; they appeared to be several hours old, were non-lethal, and could possibly result in no loss of consciousness, allowing the person to be ambulatory. Martin was confirmed to be dead at the scene. On the master bed were several fired cartridge casings, an unfired cartridge. On the bedroom floor was a key to Martin's gun safe.

Police searched the home and found the murder weapon, a .22 caliber Ruger revolver,[1] a pillow with holes in it, defendant's Kyocera cell phone, Martin's LG cell phone, as well as other items that were seized as evidence. Defendant's blood was found on items in the living room and kitchen. Police later seized a manila envelope that Martin's adult children found in the living room. The manila envelope contained three white envelopes, one each addressed to defendant's daughter, defendant's ex-husband, and defendant's son; a forensic document examiner deemed the letters to be in defendant's handwriting. In the letters, defendant apologized for reasons that were vague, apologizing in one letter for "messing up." Evidence was also admitted at trial regarding significant financial problems defendant had been attempting to hide from Martin, including an impending home foreclosure.

Dr. Brian Hunter performed an autopsy and concluded that Martin died from multiple gunshot wounds. There were five gunshot wounds, some of which were fired at close range and passed through his lungs and heart. Dr. Hunter deemed the manner of death a homicide.

Defendant moved to suppress admission of data extraction reports of the cell phone usage for the LG and Kyocera cell phones and objected to testimony by the detective who performed the extractions regarding what he found. The trial court denied defendant's motion and admitted the evidence. The detective testified that he performed a logical extraction, a file system extraction, and a physical extraction on defendant's Kyocera cell phone and obtained data from 9:00 p.m. on May 11, 2015 to 7:00 a.m. on May 12, 2015.[2] A text message was sent from defendant's cell phone at 11:40 p.m. on May 11, 2015, to a recipient whose number bore the

---

[1] The gun was linked to the murder by way of identifying marks on the cartridge casings, as well as a holster, found in the gun safe, that was believed to be for the Ruger.

[2] According to the detective, Martin's cell phone was not used after 9:34 p.m. on May 11, 2015.

label "mom." At 3:28 a.m. on May 12, 2015, the cell phone received a text from "mom" that responded to the 11:40 p.m. text message. Then the user of the Kyocera cell phone opened the cell phone's web browser and proceeded to access the following websites relating to Ruger guns:

> 3:32 a.m.: "Ruger Safety Announcements"
> 3:33 a.m.: "Ruger Inside and Out
> 3:34 a.m.: "Ruger Safety Bluebook"
> 3:35 a.m.: "Ruger Safety Announcements"

At 4:48 a.m., the cell phone user sent a text message to "mom" that stated: "Love you. Sorry." Nine seconds later, the user accessed a web page titled "Ruger New Model Single-Six, Single Action Revolvers." No further web activity or outgoing text messages occurred after 4:55 a.m. on May 12, 2015. The detective testified that neither the LG cell phone nor the Kyocera cell phone were password protected.

After the proofs were presented, the jury convicted defendant of the aforementioned offenses, and this appeal followed.

## II. ANALYSIS

On appeal, defendant takes issue with the cell phone evidence. She contends that the trial court abused its discretion by admitting as evidence the titles of the websites her Kyocera cell phone accessed on the morning of the murder. She claims that such information constituted inadmissible hearsay and was unfairly prejudicial. We disagree.

We review "for an abuse of discretion a trial court's decision to admit or exclude evidence." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). A trial court's interpretation of a rule of evidence is a question of law, and we review such questions de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is "an oral or written assertion. MRE 801(a). For purposes of the prohibition against hearsay, nonverbal conduct is also a statement if the actor intends the nonverbal conduct "as an assertion." MRE 801(a). An assertion involves "[a] person's speaking, writing, acting, or failing to act with the intent of expressing a fact or opinion." *Black's Law Dictionary* (10th ed), p 139. "Acts or conduct not intended as assertive are not hearsay and therefore, they are admissible." *People v Stewart*, 397 Mich 1, 9-10; 242 NW2d 760 (1976); see, e.g., *People v Jones*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998) (concluding that the statement at issue, "Bitch, come out," contains no assertion, is incapable of being true or false, and, therefore, is not hearsay).

The trial court correctly concluded that the titles of the Ruger-related websites defendant accessed in the early hours of May 12, 2015, were not assertions. The titles of the websites are incapable of being true or false, *Jones*, 228 Mich App at 204, and nothing indicates that defendant accessed the websites "with the intent of expressing a fact or opinion" *Black's Law Dictionary*, (10th ed), p 139. Thus, the titles of the websites were not hearsay. As such, the

website access information was properly admissible if relevant and not unduly prejudicial. See *Steward*, 397 Mich at 9.

Defendant contends that even if the website titles were not hearsay, the trial court should have excluded them because their probative value was substantially outweighed by the danger of unfair prejudice, pursuant to MRE 403. Again, we disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without it." MRE 401. "All relevant evidence is admissible[,]" MRE 402, unless its "probative value is substantially outweighed" by, among other things, "the danger of unfair prejudice," MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted).

The website information extracted from defendant's phone clearly was relevant. The prosecution charged defendant with first-degree premeditated murder, which meant that the prosecution had to prove that defendant acted with a deliberate and premeditated intent to kill. See *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984). The record shows that the prosecution admitted the cell phone data at issue to establish by circumstantial evidence that defendant deliberately and with premeditation intended to kill Martin. See *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008) (indicating that a jury may rely on circumstantial evidence and reasonable inferences drawn from such evidence for its determination of the defendant's state of mind). Defendant did not deny that the cell phone was hers, and the phone's browser history showed that a user accessed webpages of the Ruger firearm manufacturing company during the early morning hours on the day of the murder. The title of one of the webpages accessed related specifically to the model of the murder weapon. Although the evidence did not disclose the content of the webpages or the purpose for which the user accessed them, reasonable jurors could infer from the evidence that defendant had accessed webpages related to the murder weapon in contemplation of killing Martin. Thus, the evidence was relevant because it had a tendency to make the existence of the state of mind required for first-degree premeditated murder more probable.

In addition, the risk of unfair prejudice did not substantially outweigh the probative value of the cell phone evidence. MRE 403. Damaging evidence is not necessarily unfairly prejudicial; all relevant inculpatory evidence will be damaging to some extent. See *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010); *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009). The question is whether the jury will give marginally probative evidence undue or preemptive weight, or whether it is inequitable to allow the prosecution to use the evidence. *People v Waclawski*, 286 Mich App 634, 672; 780 NW2d 321 (2009).

In the case at bar, the browser history was highly probative of deliberation and premeditation. "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Morrin*, 31 Mich App 301, 329; 187 NW2d 434 (1971) (citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate

action should be long enough to afford a reasonable [person] a 'second look.' " *Id*. at 330. The detective's testimony that the cell phone user accessed the Ruger webpages over the course of more than an hour could support a jury's inference that defendant approached Martin's murder with deliberation and premeditation. See *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018) ("Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' ").

Moreover, the jury heard substantial additional evidence of defendant's premeditation and deliberation. The Ruger found at the scene and linked to the murder was a single-action revolver, which required the shooter to cock the hammer each time before pulling the trigger. Martin had been shot multiple times, including twice through a pillow. This meant that defendant had to position the pillow, consciously and deliberately cock the hammer, fire, and consciously and deliberately cock the hammer again, then fire. Considering this additional, highly probative evidence of defendant's state of mind and deliberation, defendant's accessing Ruger websites would not be given undue or preemptive weight. Simply put, its significant probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not err in admitting the evidence. See *Mardlin*, 487 Mich at 627 (noting that MRE 403 does not prohibit prejudicial evidence, only evidence that is *unfairly* prejudicial).

Finally, defendant contends for the first time on appeal that the trial court violated her right to due process when it admitted the evidence of the Kyocera cell phone usage and website access. We review unpreserved constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant bears the burden of demonstrating that an error occurred, that the error was clear or obvious, and that it affected his or her substantial rights. *Id.* In the instant case, defendant has failed to show that admitting the evidence obtained from defendant's Kyocera cell phone was any type of error, let alone plain error affecting her substantial rights. Accordingly, we find no due-process violation.

Affirmed.

/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

-5-